COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Benton, Elder, Frank, Humphreys, Clements, Felton,
           Kelsey, McClanahan, Haley and Retired Judge Bumgardner*
Argued at Richmond, Virginia


JOSHUA BRISTOL
                                                            OPINION BY
v.       Record No. 1477-04-1                    JUDGE JEAN HARRISON CLEMENTS
                                                          JANUARY 31, 2006
COMMONWEALTH OF VIRGINIA


                             UPON A REHEARING EN BANC

               FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                             Johnny E. Morrison, Judge

               Timothy V. Anderson (Anderson & Good, PC, on brief), for
               appellant.

               Josephine F. Whalen, Assistant Attorney General (Judith Williams
               Jagdmann, Attorney General, on briefs), for appellee.


        Joshua Bristol was convicted in a bench trial of driving under the influence of alcohol, in

violation of Code § 18.2-266, and maiming another person while driving under the influence of

alcohol, in violation of Code § 18.2-51.4.  At trial, the Commonwealth introduced into evidence a

certificate of blood analysis to establish a rebuttable presumption that Bristol was intoxicated at the

time of the alleged offenses.  See Code §§ 18.2-268.2 and 18.2-269.  On appeal, Bristol contends

the trial court erred in admitting the certificate of analysis into evidence because he was not

validly arrested before the blood sample referenced in the certificate of analysis was withdrawn

from him, as required under the implied consent law.  On May 3, 2005, a unanimous panel of this

Court agreed with Bristol and reversed his convictions.  Bristol v. Commonwealth, 45 Va. App.

---

        * Judge Bumgardner participated in the hearing and decision of this case prior to the
effective date of his retirement on December 31, 2005.

534, 543-44, 612 S.E.2d 244, 248 (2005). On May 31, 2005, we granted the Commonwealth's petition for a rehearing en banc, stayed the mandate of the panel decision, and reinstated the appeal. Bristol v. Commonwealth, 45 Va. App. 673, 613 S.E.2d 480 (2005). Concluding, upon rehearing en banc, that Bristol was validly arrested prior to the removal of his blood, we affirm the judgment of the trial court and Bristol's convictions.

## I. BACKGROUND

"Under familiar principles of appellate review, we view the evidence and all reasonable inferences fairly deducible from that evidence in the light most favorable to the Commonwealth, the party that prevailed below." Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d 876, 877 (2003). So viewed, the evidence presented to the trial court established that, on the evening of July 4, 2003, Joshua Bristol drove his motorcycle to a bar in Portsmouth called the Three Cheers Lounge, where he and his friends drank alcohol, played pool, and socialized for about three hours. Bristol exited the bar around 1:45 a.m., as it was in the process of closing. As Bristol walked from the bar, Debra Fly asked if he would give her a ride on his motorcycle. Bristol agreed.

With Fly sitting behind him on the motorcycle, Bristol circled the bar twice, weaving around the parking lot at speeds estimated to be between 50 and 80 m.p.h. and nearly hitting two pedestrians. Completing his second circuit of the parking lot, Bristol drove directly toward a group of people standing near the curb outside the front of the bar. Without appearing to slow down, the motorcycle struck April Mapp and knocked her into the air. Bristol lost control of the motorcycle, causing him and Fly to fall off the vehicle.

Responding to a report of an accident with injuries, Portsmouth Police Officer J.M. Doyle arrived at the scene at approximately 1:56 a.m. He observed Bristol lying near his motorcycle in the parking lot at the front of the bar. He was conscious but appeared to have some "scrapes and bruises" on his face. Doyle also observed Mapp lying in the parking lot approximately fifty feet

- 2 -

from Bristol's location. She appeared to have "head injuries." Before Doyle reached the injured, emergency medical personnel arrived and began treating them.

The paramedic who attended Bristol at the scene of the accident and in the ambulance on the way to the hospital observed that, although alert and in stable condition when placed in the ambulance, Bristol "seemed a little bit confused" and smelled of alcohol. She asked Bristol if he had been drinking, and Bristol responded that he had.

Interviewing witnesses outside the bar, Officer Doyle learned that, after exiting the bar shortly before it closed at 2:00 a.m., Bristol got on his motorcycle with a passenger behind him and drove "through the parking lot showing off." Doyle also learned that Bristol then drove "toward[] a crowd of people, at which time the accident occurred."

After speaking with the people outside the bar, Officer Doyle went to the hospital to check on Bristol's injuries and speak with him about the accident. Doyle arrived at Bristol's bedside in the trauma unit of the hospital around 2:50 a.m. In speaking with Bristol, Doyle noticed that Bristol's speech was "slightly slurred." Doyle also observed that Bristol had an odor of alcohol about his person that was "quite strong." At 2:56 a.m., Doyle told Bristol he was under arrest for suspicion of driving under the influence of alcohol. Reading from a prepared card, Doyle then advised Bristol of Virginia's implied consent law, in pertinent part, as follows:

> Any person who operates a motor vehicle upon a highway . . . in this Commonwealth is deemed thereby as a condition of such operation to have consented to have samples of his blood and breath taken for chemical test to determine the alcohol and drug content of his blood if arrested within three hours of the alleged offense or violation of 18.2-266 . . . . He shall submit to a breath test unless the test is unavailable or you are physically unable to comply, in which case a blood test will be given.

See Code § 18.2-268.2. Doyle also informed Bristol that a "[c]onviction of unreasonably refusing to [submit to a] chemical test constitutes grounds for suspension of the privilege to operate a motor vehicle in this Commonwealth for a period of one year." See Code § 18.2-268.3. Bristol indicated

- 3 -

he understood the implied consent law and agreed to have his blood drawn. Doyle testified he did not take Bristol into physical custody upon placing him under arrest because Bristol was still "being seen" by the hospital's medical personnel.

At 3:05 a.m., Bristol signed a consent form provided by the hospital, giving his permission to have his blood withdrawn. He then accompanied Officer Doyle to the hospital's emergency room. The medical technologist who was to withdraw Bristol's blood took the consent form and asked Bristol if he understood that the blood was being drawn for the police officer. Bristol said that he understood and that he consented. The medical technologist drew the first vial of blood from Bristol's arm at 3:49 a.m. and completed the process at 3:53 a.m., at which time she sealed the two vials in boxes and gave them to Doyle.

Officer Doyle then gave the vials of blood to Officer James Eberts, the chief investigating officer in the case, who had arrived at the hospital as Doyle was arranging for the withdrawal of Bristol's blood. Eberts attempted to speak with Bristol in the emergency room but found him "incoherent" and not wanting to talk. According to Eberts, Bristol's "speech was slurred and slow" and he appeared to be in pain from the accident. Eberts testified Bristol was not "physically" placed under arrest that night "because he was in the hospital for treatment." Upon returning to the police station, Eberts completed his accident report, filled out the paperwork for the drawn blood, and turned the vials over to the property and evidence department, which mailed them to the Division of Forensic Science in Richmond.

On July 7, 2003, Officer Eberts returned a phone call from Bristol's wife, who wanted to speak with the officer about the accident. After Bristol's wife arranged to meet with Eberts at the police station, Bristol, who had been discharged from the hospital, "also got on the line and agreed" to meet with Eberts at the police station. The next day, Bristol and his wife went to the police

- 4 -

station and spoke with Eberts. When the meeting ended, Bristol was not physically taken into custody and was "free to go."

On August 18, 2003, the Division of Forensic Science filed a certificate of analysis indicating that laboratory analysis of the blood withdrawn from Bristol at 3:49 a.m. on July 5, 2003, revealed that Bristol had a blood alcohol content at the time of .11% by weight by volume. On September 4, 2003, the grand jury indicted Bristol for driving under the influence of alcohol, in violation of Code § 18.2-266, and maiming another while driving under the influence of alcohol, in violation of Code § 18.2-51.4. On September 11, 2003, Bristol turned himself in at the police station, at which time he was physically taken into custody by the police.

At trial, Bristol objected to the introduction of the certificate of analysis, arguing, *inter alia*, that the certificate was inadmissible under the implied consent law because he had not been validly arrested at the time the blood sample was taken. There was no arrest at the hospital, he argued, because the police lacked probable cause and never restrained him or took him into physical custody. The trial court overruled the objection and admitted the certificate of analysis into evidence. An expert forensic toxicologist then testified that no person with a blood alcohol content of .11% by weight by volume could "safely operate a motor vehicle."

The trial court subsequently convicted Bristol of the charged offenses, and this appeal followed.

## II. ANALYSIS

Bristol contends on appeal, as he did below, that he was not validly arrested before his blood was withdrawn for chemical testing, as required by the implied consent law. Bristol argues his purported arrest in the hospital by Officer Doyle was not valid, for purposes of the implied consent law, because Doyle lacked probable cause to arrest him and "did nothing to secure [that] arrest." He was not validly arrested within the meaning of the implied consent law,

he asserts, until he turned himself in at the police station and the police took him into physical custody on the indictment, more than two months after the tested sample of his blood was taken. Thus, he concludes, the trial court erred in determining he was validly arrested prior to the removal of his blood and in consequently ruling the certificate of analysis was admissible under the implied consent statute. We disagree.

Code § 18.2-268.2, Virginia's implied consent law, provides, in pertinent part, as follows:

> A. Any person . . . who operates a motor vehicle upon a highway . . . in this Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both . . . taken for a chemical test to determine the alcohol . . . content of his blood, if he is arrested for violation of [Code ]§ 18.2-266 . . . within three hours of the alleged offense.

> B. Any person so arrested . . . shall submit to a breath test. If the breath test is unavailable or the person is physically unable to submit to the breath test, a blood test shall be given.

"The purpose of the implied consent law requiring the test to be taken is to determine the concentration of alcohol in a driver's blood or breath sample, and thereby determine the driver's state of intoxication or sobriety." Quinn v. Commonwealth, 9 Va. App. 321, 324, 388 S.E.2d 268, 270 (1990). If the blood or breath test "reveals a blood alcohol concentration of .08% or more, the Commonwealth is entitled to a rebuttable presumption that the person was intoxicated." Smith v. Commonwealth, 32 Va. App. 228, 233, 527 S.E.2d 456, 459 (2000) (citing Code § 18.2-269).

However, "[t]he results of a blood or breath test provided by [the implied consent law] are admissible against the accused in a trial for driving under the influence of alcohol [only] so long as the accused has first been validly arrested." Durant v. Suffolk, 4 Va. App. 445, 448, 358 S.E.2d 732, 734 (1987). Absent a valid, timely arrest, "the Commonwealth has no right to collect the [blood or breath] sample in the first place and, *a fortiori*, even less right to offer into evidence test results based on the sample." Cutright v. Commonwealth, 43 Va. App. 593, 601,

601 S.E.2d 1, 5 (2004). Indeed, if an accused is not validly arrested prior to the taking of his blood, his "consent for blood alcohol testing is not implied," Smith, 32 Va. App. at 233, 527 S.E.2d at 459, and his actual consent "'based upon a belief, generated by the officer's recitation of the [implied consent] law, that he was bound to submit to a test'" is invalid, Durant, 4 Va. App. at 449, 358 S.E.2d at 734 (quoting Thomas v. Town of Marion, 226 Va. 251, 254, 308 S.E.2d 120, 122 (1983)). Thus, an untimely arrest "results in exclusion of the certificate of analysis of the blood." Overbee v. Commonwealth, 227 Va. 238, 242, 315 S.E.2d 242, 243 (1984).

It is clear, therefore, that the certificate of analysis was not admissible in the present case unless Officer Doyle validly arrested Bristol in the hospital before the medical technologist drew Bristol's blood at 3:49 a.m. Although the term "arrested" is not defined by Code § 18.2-268.2, it is well established that, to be valid, a warrantless arrest "[(1)] requires a demonstration of probable cause regarding criminal conduct and [(2)] occurs when the officer actually restrains the individual or the individual submits to the authority of the officer." White v. Commonwealth, 267 Va. 96, 104, 591 S.E.2d 662, 666 (2004). Upon our review of the record in this case, we conclude that Officer Doyle's arrest of Bristol at the hospital satisfied both of the conditions set forth in White and was therefore valid.

### A. Probable Cause

"[A]n assertion that the police lacked probable cause to arrest a defendant presents a question of both law and fact, which is reviewed *de novo* on appeal." McCain v. Commonwealth, 261 Va. 483, 489, 545 S.E.2d 541, 545 (2001); see Ornelas v. United States, 517 U.S. 690, 699 (1996). However, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the [reasonable] inferences drawn from those facts by resident judges and local law enforcement officers." McGee v.

Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas, 517 U.S. at 699).

> The legal standard of probable cause, as the term suggests, relates to probabilities that are based upon the factual and practical considerations in everyday life as perceived by reasonable and prudent persons. The presence or absence of probable cause is not to be examined from the perspective of a legal technician. Rather, probable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed.

Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981). "In determining whether probable cause exists[,] courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976). "'Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" Boyd v. Commonwealth, 12 Va. App. 179, 188-89, 402 S.E.2d 914, 920 (1991) (quoting Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983)). Moreover, an officer investigating whether an offense has been or is being committed "is permitted to make 'common-sense conclusions about human behavior' in assessing a situation." Carson v. Commonwealth, 12 Va. App. 497, 502, 404 S.E.2d 919, 922 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion)), aff'd en banc, 13 Va. App. 280, 410 S.E.2d 412 (1991), aff'd, 244 Va. 293, 421 S.E.2d 415 (1992).

Code § 18.2-266(ii) prohibits a person from operating a motor vehicle "while such person is under the influence of alcohol." The statute's purpose "is to prohibit drinking and driving where the driver's ability is impaired to operate safely a motor vehicle." Thurston v. City of Lynchburg, 15 Va. App. 475, 483, 424 S.E.2d 701, 705 (1992). "That degree of intoxication, or being 'under the influence of alcohol,' is established when any person has consumed enough alcoholic beverages to 'so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as

- 8 -

to be apparent to observation.'" Id. (quoting Gardner v. Commonwealth, 195 Va. 945, 954, 81 S.E.2d 614, 619 (1954)). The relevant inquiry here, therefore, is whether, when examined in their totality, the circumstances known to Officer Doyle at the time he arrested Bristol were sufficient to permit a reasonable person to believe that Bristol had drunk enough alcohol to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior when he was operating his motorcycle in the parking lot of the bar.

The evidence in this case established that, when Officer Doyle told Bristol at the hospital that he was under arrest, the officer knew Bristol had been in the bar until nearly closing time and that, upon exiting the bar, Bristol had driven his motorcycle, with a passenger aboard, through the bar parking lot showing off. Doyle also knew that Bristol had then driven straight toward a crowd of people standing near the curb at the front of the bar. The officer further knew that, upon reaching the crowd, Bristol had crashed, causing injury to himself and Mapp. Having seen Mapp's post-accident condition and her position in the parking lot relative to Bristol's location, the officer could reasonably infer that Mapp's injuries were the result of a relatively high-speed crash. Additionally, Doyle knew from his own observations at the hospital that Bristol had a "quite strong" odor of alcohol about his person and that, although his only apparent injuries were scrapes and bruises, Bristol's speech was slurred.

We conclude that a reasonable person could properly infer from the totality of these circumstances that Bristol had drunk enough alcohol, at the time of the accident, to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior. See, e.g., Fierst v. Commonwealth, 210 Va. 757, 760, 173 S.E.2d 807, 810 (1970) (holding that a suspect's slumped posture in the car, wan or drunken appearance, "mumbly" speech, inability to locate his license, and need for assistance in exiting the car were sufficient indicators of intoxication to warrant his arrest); Clarke v. Commonwealth, 32 Va. App. 286, 296, 527 S.E.2d 484, 489 (2000)

(holding that a suspect's bloodshot eyes and erratic speech pattern and the odor of alcohol about the suspect's person provided probable cause to arrest him for public intoxication). We hold, therefore, that Officer Doyle had probable cause to arrest Bristol for driving under the influence of alcohol, in violation of Code § 18.2-266.

## B. Effectuation of the Arrest

We next turn to Bristol's claim that his purported arrest in the hospital by Officer Doyle was invalid, for purposes of the implied consent law, because Doyle did not "secure" the arrest. Bristol asserts that, notwithstanding the officer's testimony that he told him he was under arrest, Doyle never restrained him or took him into physical custody. Thus, Bristol reasons, Doyle's actions were insufficient to actually effectuate the arrest. Consequently, he concludes, "[a]t no point prior to the extraction of [his] blood was he ever arrested by Officer Doyle." We disagree.

The legal determination whether an arrest occurred requires a *de novo* review on appeal of the application of the relevant law to the historical facts as found by the trial court. See Cavell v. Commonwealth, 28 Va. App. 484, 486-87, 506 S.E.2d 552, 553 (1998) (en banc) (conducting a *de novo* review of the issue whether an officer actually effectuated the appellant's arrest); see also United States v. Hamlin, 319 F.3d 666, 671 (4th Cir. 2003) (holding that an appellate court reviews *de novo* the legal determination whether an officer's actions "amount to an arrest").

"'With a few statutory exceptions, . . . the common law relating to arrest is the law on that subject in Virginia.'" Cavell, 28 Va. App. at 486, 506 S.E.2d at 553 (quoting Galliher v. Commonwealth, 161 Va. 1014, 1021, 170 S.E. 734, 736 (1933)). "Under the common law, an arrest required either the application of physical force or, where that was absent, submission to the assertion of authority." Id. (citing California v. Hodari D., 499 U.S. 621, 626-27 (1991)); see also Howard v. Commonwealth, 210 Va. 674, 677, 173 S.E.2d 829, 832 (1970) ("Ordinarily, an arrest is made by the actual restraint of the person of the defendant or by his submission to the

- 10 -

custody of an officer."). Thus, an officer's "immediate physical ability to arrest, without more, was not sufficient to effectuate an arrest." Cavell, 28 Va. App. at 486, 506 S.E.2d at 553. Likewise, an officer's assertion of authority, by itself, was not enough to constitute an arrest. See Hodari D., 499 U.S. at 626-27.

Indeed, as the United States Supreme Court explained in Hodari D.:

> "Mere words will not constitute an arrest, while, on the other hand, no actual, physical touching is essential. The apparent inconsistency in the two parts of this statement is explained by the fact that an assertion of authority and purpose to arrest followed by submission of the arrestee constitutes an arrest. There can be no arrest without either touching or submission."

Id. (quoting Rollin M. Perkins, The Law of Arrest, 25 Iowa L. Rev. 201, 206 (1940) (footnotes omitted)). In sum, an arrest occurs, as previously noted, only when the arresting officer "actually restrains the individual or the individual submits to the authority of the officer." White, 267 Va. at 104, 591 S.E.2d at 666.

In the present case, it is undisputed that Officer Doyle did not restrain or take physical custody of Bristol in the hospital. The relevant inquiry, therefore, is twofold: whether Doyle asserted his authority with the purpose to arrest Bristol and, if so, whether Bristol submitted to that authority. If not, no arrest occurred. "[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." Hodari D., 499 U.S. at 628. Upon reviewing the relevant record evidence in light of the foregoing principles of law, we conclude that Doyle asserted his authority with the purpose to arrest Bristol and that Bristol submitted to that authority.

The evidence established that, after seeking out Bristol at the hospital and interviewing him regarding his involvement in the motorcycle accident at the bar, Officer Doyle told Bristol he was under arrest for driving under the influence of alcohol. Doyle then recited pertinent portions of

- 11 -

Virginia's implied consent law, effectively informing Bristol that, by virtue of the arrest, he must have a sample of his blood taken to determine its alcohol content or face prosecution and the possibility of having his privilege to drive in Virginia suspended for a year if he unreasonably refused to give such a sample. In response, Bristol acknowledged he understood the implied consent law and agreed to have his blood drawn pursuant to that law. In succession, Bristol then executed a consent form authorizing the drawing of his blood, informed the medical technologist that he agreed to have his blood drawn for the officer, and gave two vials' worth of blood, all while accompanied by Doyle.

Plainly, in telling Bristol he was under arrest and advising him of Virginia's implied consent law, Officer Doyle asserted his lawful authority to arrest Bristol for driving under the influence of alcohol and to initiate, in conjunction with that arrest, the statutorily mandated investigation of Bristol's blood alcohol content. See Code §§ 19.2-81, 18.2-266(ii), and 18.2-268.2(B). The officer's recitation of the implied consent law informed Bristol that the arrest was for the purpose of invoking the procedures of that law in order to obtain either a blood sample from Bristol for chemical testing or Bristol's prosecution and conviction for unreasonably refusing to submit to such testing. This show of authority clearly indicated that Bristol was not free to leave the officer's presence, even if he were released from the care of the hospital's medical staff. Although there was no physical contact or other form of physical restraint imposed by the officer, a reasonable person in this situation would have perceived from Doyle's words and actions that submission to the officer's authority was compelled. Indeed, Bristol yielded to that authority by agreeing to submit to a blood test, accompanying the officer to the emergency room, and providing a blood sample. We conclude, therefore, that Bristol's consenting to the blood test constituted an acknowledgement of and a submission to Doyle's assertion of authority. Accordingly, we hold that, for purposes of the implied consent law, an arrest occurred at that time.

Bristol further asserts the arrest was never actually effectuated because the post-arrest actions of Officers Doyle and Eberts did not "objectively manifest an arrest." Bristol notes in particular that, after being treated for his injuries, he was able to leave the hospital "without any official restraint" and he was not taken into physical custody when he voluntarily went to the police station to speak with Eberts three days after the accident. Likewise, Bristol continues, Doyle never brought him before a magistrate, informed Eberts of the arrest, or mentioned the arrest in his report.

Contrary to Bristol's assertion, however, an arrest takes place once the arrestee "submits to the authority of the [arresting] officer." White, 267 Va. at 104, 591 S.E.2d at 666. Thus, Bristol's arrest was effectuated the moment he submitted to Officer Doyle's authority by consenting to the blood test, notwithstanding the officers' failure to subsequently act in a manner that "objectively manifest[ed] an arrest." See generally Walter v. Commonwealth, 8 Va. App. 485, 490, 382 S.E.2d 484, 487 (1989) (holding that the defendant was under arrest within the meaning of the implied consent statute when the arresting officer placed him under arrest at the hospital, not when post-arrest procedural requirements were fulfilled following his release from the hospital). What occurred after the withdrawal of Bristol's blood incident to that arrest has no bearing on the issue whether Doyle arrested Bristol before Bristol's blood was withdrawn. Hence, such evidence is irrelevant to our analysis.

### III. CONCLUSION

We hold, therefore, that Bristol was validly arrested within the meaning of Code § 18.2-268.2 prior to the taking of the blood sample referenced in the certificate of analysis. Consequently, the trial court did not err in admitting the certificate of analysis into evidence, and we affirm Bristol's convictions.

Affirmed.

Benton, J., with whom Elder, J., joins, dissenting.

This appeal challenges the validity of an arrest before removing blood pursuant to the implied consent law, Code § 18.2-268.2, and the admission into evidence of the certificate of analysis of the blood. "[I]f the arrest is not lawful, consent for the blood alcohol test is not implied, and the results of any such test are not admissible [to prove] intoxication." Smith v. Commonwealth, 32 Va. App. 228, 233-34, 527 S.E.2d 456, 459 (2000). I would hold that the arrest was not valid and that the admission of the certificate of analysis was reversible error.

## I. Validity of Arrest

I agree with the majority's statement of the principle that, "under the common law, an arrest required either the application of physical force or, where that was absent, submission to the assertion of authority." Cavell v. Commonwealth, 28 Va. App. 484, 486, 506 S.E.2d 552, 553 (1998) (en banc) (citing California v. Hodari D., 499 U.S. 621, 626-27 (1991)). "At common law, four requisites are involved in arrest: (1) A purpose to take the person into custody, (2) under real or pretended authority, (3) resulting in actual or constructive seizure or detention of his person, (4) so understood by the arrestee." Rollin M. Perkins, The Law of Arrest, 25 Iowa L. Rev. 201, 208 (1940). The person to be arrested is entitled to know of "(1) the intention to take him into the custody of the law, (2) the authority for the arrest, and (3) the reason therefor." Id. at 249.

Put simply, mere words do not constitute an arrest at common law. Cavell, 28 Va. App. at 487, 506 S.E.2d at 553. Likewise, an officer's "immediate physical ability to arrest, without more, [is] not sufficient to effectuate an arrest." Id. at 486, 506 S.E.2d at 553 (citing Perkins, supra at 206).

Although Officer Doyle testified that he orally told Bristol he was under arrest, his words did not suffice to constitute an arrest. Cavell, 28 Va. App. at 487, 506 S.E.2d at 553. The record

proves that neither Officer Doyle nor Officer Eberts took actions to actually arrest Bristol or to objectively manifest an arrest. They did not restrain him or touch him in any manner when talking to him. Moreover, their actions do not suggest that their purpose was to arrest Bristol or that Bristol was ever in fact taken into custody. Indeed, when Officer Doyle left the hospital, he did not even inform Officer Eberts, his supervising officer, that he had "arrested" Bristol. The report he later prepared at the police station does not mention an arrest.

Officer Eberts, who remained in the emergency room after Officer Doyle left the hospital, testified that he did not arrest Bristol and that Officer Doyle did not tell him that Bristol was under arrest. Officer Eberts further testified that when he attempted to talk to Bristol, Bristol was "incoherent," was "hurting [due to] pain from the accident," and was *not* under arrest. Officer Eberts then left Bristol in the hospital and went to the police station to write his report. Bristol was treated for his head injury and later left the hospital without any official restraint. Up to this point, no valid arrest had occurred.

The evidence did not prove Bristol submitted to Officer Doyle's words of arrest. Bristol's consent to the taking of his blood cannot be deemed an acquiescence to an arrest. The implied consent law provides that "[a] person, *after having been arrested . . .* , may be required to submit to a blood test." Code § 18.2-268.2(C) (emphasis added). The statute, thus, presupposes a valid arrest before consent is obtained for the test. The consent to the taking of the test does not establish the fact of an arrest, which the statute first requires. To suppose that it does is to engage in a post hoc rationalization and circular reasoning. Bristol merely consented to the taking of his blood after Officer Doyle told him that his refusal to consent could lead to the suspension of his driving privileges and could be used as evidence in a criminal trial. Shortly after Bristol signed the consent form in a bed in the trauma area, hospital personnel took him

from the trauma area to the emergency room, where a technician drew his blood. No evidence proved that Officer Doyle took any action to arrest Bristol or that Bristol submitted to an arrest.

In addition, the officers' actions after Bristol was released from the hospital fail to show that their purpose was to arrest Bristol at the hospital or to take Bristol into custody. Two days after the accident, when Officer Eberts spoke by telephone with Bristol at his home, he did not inform Bristol that he was under arrest. Indeed, he sought Bristol's *voluntary* appearance for questioning. When Bristol arrived at the police station one day later, Officer Eberts questioned Bristol, but again he did not tell Bristol he was under arrest or act in any way to manifest an arrest. As Officer Eberts testified, Bristol was free to leave and did leave after questioning. The record clearly establishes that the police did not take Bristol into custody until after the grand jury returned an indictment in September 2003, more than two months after the accident. Then, Bristol voluntarily appeared at the police station, where an officer served a capias issued upon the indictment, arrested him, and took custody of him. Simply put, the police arrested Bristol four months after the accident.

Bristol notes in his argument that the usual statutory process of arrest was missing until the September arrest. Code § 19.2-82(A) requires that "a person arrested without a warrant shall be brought forthwith before a magistrate or other issuing authority having jurisdiction who shall proceed to examine the officer making the arrest." The evidence is undisputed that Officer Doyle failed to bring Bristol before a magistrate and had no apparent intention of doing so. Bristol was therefore never "arrested" within the meaning of the common law or the statute until four months after the accident. Whether probable cause to arrest existed is irrelevant in this analysis because Officer Doyle failed to properly effectuate Bristol's arrest.

"The results of a blood or breath test provided by [the implied consent law] are admissible against the accused in a trial for driving under the influence of alcohol so long as the

accused has first been validly arrested." Durant v. Suffolk, 4 Va. App. 445, 448, 358 S.E.2d 732, 734 (1987). Reversing the conviction for driving under the influence, we reasoned as follows:

> "Since the arrest was untimely, the defendant is not deemed to have consented to the testing of his breath under the 'implied consent' law. Moreover, defendant's actual consent in this case was invalid because it was based upon a belief, generated by the officer's recitation of the law, that he was bound to submit to a test. Hence, receipt of the certificate [of analysis] in evidence was improper."

Id. at 449, 358 S.E.2d at 734 (quoting Thomas v. Town of Marion, 226 Va. 251, 254, 308 S.E.2d 120, 122 (1983)).

As in Durant and Thomas, Bristol's arrest months later was untimely for purposes of the implied consent law. Bristol was not validly arrested in the hospital and was not bound under the statute to submit to a blood test when in the hospital. Because his consent was not implied under these circumstances, and any actual consent "was based upon a belief, generated by the officer's recitation of the law, that he was bound to submit to a test," the trial judge erred by admitting the certificate of analysis into evidence. Id.

## II. Exigent Circumstances

The Commonwealth contends that even if the arrest was invalid, the search and seizure of Bristol's blood was valid under the exigent circumstances exception to the Fourth Amendment. Citing Schmerber v. California, 384 U.S. 757 (1966), and Tipton v. Commonwealth, 18 Va. App. 370, 444 S.E.2d 1 (1994), the Commonwealth argues that although the certificate of analysis was inadmissible, the results from blood analysis were admissible, as in Tipton, via the testimony of the forensic toxicologist.

In Tipton, the trial judge made specific findings that the officer had probable cause to arrest the defendant and that exigent circumstances justified taking his blood. 18 Va. App. at 372, 444 S.E.2d at 2. The Commonwealth then introduced the test results through the testimony

of the chemist who performed the test. The trial judge did not permit the prosecutor to use either the certificate of analysis or the statutory presumptions. Id. In comparison to Tipton, the trial judge in this case admitted the certificate of analysis into evidence. We can assume that by doing so, the trial judge sitting as fact finder applied the statutory presumption that Bristol was intoxicated.

Also, unlike Tipton, the trial judge made no finding that probable cause existed to arrest Bristol or that the search and seizure of his blood was reasonable under the Fourth Amendment. Given the limited investigation Officer Doyle had conducted prior to reading Bristol the implied consent statute, we cannot presume what findings the trial judge would have made under the circumstances of this case. Thus, I would hold that Tipton's reasoning does not apply.

### III.  Harmless Error

The Commonwealth also contends that even if the trial court erred in admitting the evidence, the error was harmless. I disagree.

Recognizing the prejudicial effect of the certificate of analysis and the rebuttable presumption that attaches to it, the Supreme Court reversed a conviction in a case where a defendant "had a strong odor of alcohol about his person," was slurring his speech, and admitted to consuming beer and whisky. See Thomas, 226 Va. at 254, 308 S.E.2d at 121. In Durant, this Court similarly was unable to conclude, "as a matter of law that the result would not have been different if such evidence had not been considered by the trial court." 4 Va. App. at 449, 358 S.E.2d at 734. This is so "[b]ecause it is probable that [the fact finder] attached great weight to the incriminating evidence in the certificate." Thomas, 226 Va. at 254, 308 S.E.2d at 122. Accord Overbee v. Commonwealth, 227 Va. 238, 244, 315 S.E.2d 242, 245 (1984); Castillo v. Commonwealth, 21 Va. App. 482, 489, 465 S.E.2d 146, 149 (1995); Durant, 4 Va. App. at 449, 358 S.E.2d at 734.

I am unable to say from the circumstances of this case that the error did not affect the verdict. The trial judge admitted the certificate of analysis after ruling that the implied consent law was applicable. I can only assume that the judge relied upon the certificate, which he admitted in evidence, in convicting Bristol. This Court and the Supreme Court have held that the error is not harmless even when there is compelling evidence of a defendant's intoxication independent of the certificate of analysis. See, e.g., Castillo, 21 Va. App. at 486, 465 S.E.2d at 148 (comparing Overbee, 227 Va. at 240, 315 S.E.2d at 243; Thomas, 226 Va. at 253, 308 S.E.2d at 121, and Durant, 4 Va. App. 445, 358 S.E.2d 732). As we held in Castillo, "[c]lear evidence . . . implies that the trial court applied the statutory presumption of intoxication; we[, therefore,] cannot say from the facts and circumstances that this error did not affect the verdict." 21 Va. App. at 491, 465 S.E.2d at 150.

For these reasons, I would reverse the convictions and remand for a new trial if the Commonwealth be so advised. Therefore, I dissent.

Tuesday                    31st

May, 2005.


Joshua Bristol,                                                                        Appellant,

against        Record No. 1477-04-1
               Circuit Court Nos. CR03-2164-01 and CR03-2164-02

Commonwealth of Virginia,                                              Appellee.


Upon a Petition for Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Bumgardner, Frank,
Humphreys, Clements, Felton, Kelsey, McClanahan and Haley


On May 17, 2005 came the appellee, by the Attorney General of Virginia, and filed a petition

praying that the Court set aside the judgment rendered herein on May 3, 2005, and grant a rehearing *en*

*banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered

herein on May 3, 2005 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated

on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. The appellee shall attach as an

addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the

Court in this matter.  It is further ordered that the appellee shall file with the clerk of this Court twelve

additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

Present:    Judges Benton, Frank and Senior Judge Overton
Argued at Chesapeake, Virginia


JOSHUA BRISTOL

                                                              OPINION BY
v.         Record No. 1477-04-1                    JUDGE JAMES W. BENTON, JR.
                                                              MAY 3, 2005

COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                          Johnny E. Morrison, Judge

              Timothy V. Anderson (Anderson Good, P.C., on brief), for
              appellant.

              Josephine F. Whalen, Assistant Attorney General (Jerry W. Kilgore,
              Attorney General, on brief), for appellee.


        The trial judge convicted Joshua Bristol of driving under the influence of alcohol in

violation of Code § 18.2-266 and of maiming another person while driving under the influence of

alcohol in violation of Code § 18.2-51.4.  At trial, the Commonwealth introduced into evidence a

certificate of blood analysis to establish a rebuttable presumption that Bristol was intoxicated at the

time of the alleged offense.  See Code §§ 18.2-266(i) and 18.2-268.2.  Bristol contends the trial

judge erred in ruling he was arrested prior to removal of his blood and, consequently, erred in ruling

the certificate was admissible under the implied consent statute.  We agree and, for the reasons that

follow, reverse his convictions and remand for a retrial if the Commonwealth be so advised.

                                          I.

        On the evening of July 4, 2003, Joshua Bristol and two friends went to the Three Cheers

Lounge, where they drank alcohol, played pool, and socialized for about three hours.  Bristol exited

the Lounge between 1:45 and 2:00 a.m., when it was closing.  As Bristol walked to his motorcycle,

Debra Fly asked if he would give her a ride on his motorcycle. Bristol agreed. After Fly mounted the motorcycle, Bristol circled the parking lot at speeds estimated to be between 50 and 80 m.p.h. Completing his circuit of the parking lot, Bristol drove toward a crowd of people standing near the curb. The motorcycle struck a bystander, April Mapp, and knocked her into the air. Bristol lost control of the motorcycle, causing injury to himself and Fly when the motorcycle fell.

After police and paramedical personnel arrived, the paramedics took Mapp to a hospital. She suffered serious injuries to her head and brain and a broken leg. The paramedic who attended Bristol testified he had a head injury and smelled of alcohol. When he asked Bristol if he had been drinking, Bristol responded that he had. The paramedic took him to another hospital.

Officer Doyle arrived at the parking lot while the paramedics were attending Bristol. After interviewing witnesses at the parking lot, Officer Doyle went to the hospital to see Mapp and then went to the other hospital to see Bristol.[1] Officer Doyle testified that at 2:56 a.m. he orally informed Bristol that he was under arrest for suspicion of driving under the influence of alcohol and read from a card explaining to Bristol the implied consent statute. He testified that Bristol said he understood what the officer read to him and consented to having his blood drawn. Officer Doyle testified that he did not take Bristol into physical custody, explaining that Bristol was then being treated in the trauma unit by medical personnel. He took no other action to arrest Bristol. At 3:05 a.m., Bristol signed a consent form the hospital provided to Officer Doyle.

When Bristol was moved from the trauma unit to the emergency room, a medical technician prepared to draw his blood. Looking at the consent form, she asked Bristol his name and social security number to verify that she was drawing blood from the right person. She also asked if he understood that she was drawing blood for the officer. Bristol said that he understood she was

---

[1] Officer Doyle testified he was told Bristol's passenger on the motorcycle was Mapp. All the witnesses who were present at the event testified, however, that Fly was the passenger and Mapp was the pedestrian.

doing that.[2]  After she drew the blood from Bristol's arm, she sealed the vials in boxes and gave them to Officer Doyle.

Officer Doyle gave the vials of blood to Officer James Eberts, his supervisor, who was present when the technician withdrew the blood.  Officer Doyle then left the hospital and went to the police station where he prepared a written statement.  The statement confirms that he read Bristol the implied consent law and that Bristol agreed to having his blood drawn.  It does not mention that he informed Bristol he was under arrest.

Officer Eberts testified he was the chief investigating officer for this case.  At the parking lot, witnesses reported to him that Bristol was driving erratically and too fast, "struck a pedestrian who was on the lot causing motorcycle to slide, ejecting [Bristol] and the passenger."  The witnesses told him that Mapp was the pedestrian and Fly was the passenger.  Officer Eberts then went to the hospital and arrived as Officer Doyle was arranging for the withdrawal of Bristol's blood.  Officer Eberts said he "tried to speak with Bristol, but he was incoherent."  Bristol's "speech was slurred and slow and he was hurting."  Officer Eberts testified Bristol was not arrested that night, explaining he "was not physically placed under arrest because he was in the hospital for treatment."  Officer Eberts caused the vials eventually to go to the Division of Forensic Science for testing.

After Bristol received treatment at the hospital, he was discharged and went home.  Two days after the accident, Officer Eberts spoke with Bristol by telephone and asked Bristol if he would "come visit [Officer Eberts] at the office."  When Bristol voluntarily appeared at the police station a day later, Officer Eberts interviewed him.  He did not inform Bristol that he had been arrested or that he was under arrest.  He testified Bristol was free to leave and did leave.

---

[2] The hospital's consent form that Bristol signed, permitting the hospital to withdraw his blood, does not contain an acknowledgement by Bristol that he had been arrested.

Two months later on September 9, 2003, the grand jury indicted Bristol for driving under the influence of alcohol in violation of Code § 18.2-266 and maiming another while driving under the influence of alcohol in violation of Code § 18.2-51.4. On September 11, 2003, Bristol went to the police station, where a police officer arrested him and took him into custody. At trial, the judge admitted in evidence the certificate of analysis over Bristol's objection. It showed a blood alcohol content of .11. In addition to the certificate, an expert forensic toxicologist testified that at such a concentration, no person could safely operate a motor vehicle. At the conclusion of the evidence, the trial judge convicted Bristol of the offenses.

II.

Bristol contends the officer did not validly arrest him prior to the removal of his blood, and he argues, therefore, the trial judge improperly admitted into evidence the certificate of analysis. The Commonwealth responds that the evidence proved a valid arrest, but, even if the certificate was inadmissible, the error was harmless.

We first turn to the statute. Code § 18.2-268.2 provides in pertinent part as follows:

> A. Any person, whether licensed by Virginia or not, who operates a motor vehicle upon a highway, as defined in § 46.2-100, in this Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested for violation of §§ 18.2-266, 18.2-266.1 or § 18.2-272 or of a similar ordinance within three hours of the alleged offense.

A valid arrest must occur within three hours of the charged offense for a person to be deemed to have given his or her "implied consent" to have a blood sample taken under the statute. Code § 18.2-268.2. "An untimely arrest . . . results in exclusion of the certificate of analysis of the blood." Overbee v. Commonwealth, 227 Va. 238, 242, 315 S.E.2d 242, 243 (1984). Likewise, "if the arrest is not lawful, consent for the blood alcohol test is not implied, and the results of any such test are inadmissible to prove intoxication." Smith v.

- 4 -

Commonwealth, 32 Va. App. 228, 233-34, 527 S.E.2d 456, 459 (2000). When, as here, the issue on appeal concerns the validity of an arrest, we review that issue *de novo*. Brown v. Commonwealth, 27 Va. App. 111, 117, 497 S.E.2d 527, 530 (1998). See also United States v. Hamlin, 319 F.3d 666, 671 (4th Cir. 2003) (holding that on appeal we review *de novo* the legal determination whether the officer's actions amount to an arrest).

"With a few statutory exceptions, . . . the common law relating to arrest is the law on that subject in Virginia." Galliher v. Commonwealth, 161 Va. 1014, 1021, 170 S.E. 734, 736 (1933). An arrest requires "'an assertion of authority and *purpose to arrest* followed by submission of the arrestee.'" California v. Hodari D., 499 U.S. 621, 626 (1991) (emphasis added) (quoting Rollin M. Perkins, The Law of Arrest, 25 Iowa L. Rev. 201, 206 (1940)). Applying these principles, we have previously held that "[t]he immediate physical ability to arrest, without more, was not sufficient to effectuate an arrest." Cavell v. Commonwealth, 28 Va. App. 484, 486, 506 S.E.2d 552, 553 (1998) (en banc). See also Howard v. Commonwealth, 210 Va. 674, 677, 173 S.E.2d 829, 832 (1970) ("Ordinarily, an arrest is made by the actual restraint of the person of the defendant or by his submission to the custody of an officer."). "At common law, four requisites are involved in arrest: (1) A purpose to take the person into custody, (2) under real or pretended authority, (3) resulting in actual or constructive seizure or detention of his person, (4) so understood by the arrestee." Perkins, supra at 208. The person to be arrested is entitled to know of "(1) the intention to take him into the custody of the law, (2) the authority for the arrest, and (3) the reason therefor." Id. at 249. Thus, at common law, mere words do not constitute an arrest. Cavell, 28 Va. App. at 487, 506 S.E.2d at 553.

Although Officer Doyle testified that he orally told Bristol he was under arrest, that did not suffice to constitute an arrest. Id. The record proves that neither Officer Doyle nor Officer Eberts took actions to actually arrest Bristol or to objectively manifest an arrest. Moreover, their

actions do not suggest that their purpose was to arrest Bristol or that Bristol was ever in fact taken into custody. Indeed, when Officer Doyle left the hospital, he did not even inform Officer Eberts, his supervising officer, that he had "arrested" Bristol. The report he later prepared at the police station does not mention an arrest.

Officer Eberts, who remained with Bristol after Officer Doyle left the hospital, testified that he did not arrest Bristol and that Officer Doyle did not tell him that Bristol was under arrest. Officer Eberts further testified that when he attempted to talk to Bristol, Bristol was "incoherent" and was *not* under arrest. Bristol was treated and later left the hospital without any official restraint. Up to this point, no valid arrest had occurred.

Significantly, Code § 19.2-82(A) requires that "a person arrested without a warrant shall be brought forthwith before a magistrate or other issuing authority having jurisdiction who shall proceed to examine the officer making the arrest." It is undisputed that Officer Doyle failed to bring Bristol before a magistrate and had no apparent intention of doing so. Bristol was therefore never "arrested" within the meaning of the statute or the common law.

Bristol's consent to the taking of his blood cannot be deemed an acquiescence to an arrest. The implied consent law provides that "[a] person, *after having been arrested* . . . may be required to submit to a blood test." Code § 18.2-268.2(C) (emphasis added). The statute, thus, presupposes a valid arrest before consent is obtained for the test. The consent to the taking of the test does not establish the fact of an arrest, which the statute first requires. To suppose that it does is to engage in a post hoc rationalization and circular reasoning. No evidence proved that the first officer took any action to arrest Bristol or that Bristol submitted to an arrest. He merely consented to the taking of his blood after Officer Doyle told him that his refusal to consent could lead to the suspension of his driving privileges and could be used as evidence in a criminal trial.

In addition, the officers' actions after Bristol was released from the hospital also fail to show that their purpose was to arrest Bristol at the hospital or to take Bristol into custody. Two days after the accident, when Officer Eberts spoke by telephone with Bristol at his home, he did not inform Bristol that he was under arrest. Indeed, he sought Bristol's *voluntary* appearance for questioning. When Bristol arrived at the police station one day later, Officer Eberts questioned Bristol, but he did not tell Bristol he was under arrest. As Officer Eberts testified, Bristol was free to leave after questioning, and Bristol did leave. The record clearly establishes that the police did not take Bristol into custody until after the grand jury returned an indictment in September 2003, more than two months after the accident. Then, Bristol voluntarily appeared at the police station, where an officer served the indictment, arrested him, and took custody of him.

"The results of a blood or breath test provided by [the implied consent law] are admissible against the accused in a trial for driving under the influence of alcohol so long as the accused has first been validly arrested." Durant v. Suffolk, 4 Va. App. 445, 448, 358 S.E.2d 732, 734 (1987). We reasoned as follows:

> "Since the arrest was untimely, the defendant is not deemed to have consented to the testing of his breath under the 'implied consent' law. Moreover, defendant's actual consent in this case was invalid because it was based upon a belief, generated by the officer's recitation of the law, that he was bound to submit to a test. Hence, receipt of the certificate [of analysis] in evidence was improper."

Id. at 449, 358 S.E.2d at 734 (quoting Thomas v. Town of Marion, 226 Va. 251, 254, 308 S.E.2d 120, 122 (1983)). As in Durant and Thomas, Bristol's arrest months later was untimely for purposes of the implied consent law. Bristol was not validly arrested in the hospital and was not bound under the statute to submit to a blood test when in the hospital. Because his consent was not implied under these circumstances, and any actual consent "was based upon a belief,

- 7 -

generated by the officer's recitation of the law, that he was bound to submit to a test," the trial judge erred by admitting the certificate of analysis into evidence.

### III.

The Commonwealth contends that even if the arrest was invalid, the search and seizure of Bristol's blood was valid under the exigent circumstances exception to the Fourth Amendment. Citing Schmerber v. California, 384 U.S. 757 (1966), and Tipton v. Commonwealth, 18 Va. App. 370, 444 S.E.2d 1 (1994), the Commonwealth argues that although the certificate of analysis was inadmissible, the results from blood analysis were admissible, as in Tipton, via the testimony of the forensic toxicologist.

In Tipton, the trial judge made specific findings that the officer had probable cause to arrest the defendant and that exigent circumstances justified taking his blood. 18 Va. App. at 372, 444 S.E.2d at 2. The Commonwealth then introduced the test results through the testimony of the chemist who performed the test. The trial judge did not permit the prosecutor to use either the certificate of analysis or the statutory presumptions. Id. In comparison to Tipton, here the trial judge admitted the certificate of analysis into evidence. We can assume that by doing so, the trial judge sitting as fact finder applied the statutory presumption that Bristol was intoxicated.

Also, unlike Tipton, the trial judge made no finding that probable cause existed to arrest Bristol or that the search and seizure of his blood was reasonable under the Fourth Amendment. Given the limited investigation Officer Doyle had conducted prior to reading Bristol the implied consent statute, we cannot presume what findings the trial judge would have made under the circumstances of this case. Thus, we hold that Tipton's reasoning does not apply.

### IV.

The Commonwealth contends that even if the trial court erred in admitting the evidence, the error was harmless. We disagree.

Recognizing the prejudicial effect of the certificate and the rebuttable presumption that attaches to it, the Supreme Court reversed a conviction in a case where a defendant "had a strong odor of alcohol about his person," was slurring his speech, and admitted to consuming beer and whisky. See Thomas, 226 Va. at 254, 308 S.E.2d at 121. In Durant, this Court similarly was unable to conclude, "as a matter of law that the result would not have been different if such evidence had not been considered by the trial court." 4 Va. App. at 449, 358 S.E.2d at 734. This is so "[b]ecause it is probable that [the fact finder] attached great weight to the incriminating evidence in the certificate." Thomas, 226 Va. at 254, 308 S.E.2d at 122. Accord Overbee, 227 Va. at 244, 315 S.E.2d at 245; Castillo v. Commonwealth, 21 Va. App. 482, 489, 465 S.E.2d 146, 149 (1995); Durant, 4 Va. App. at 449, 358 S.E.2d at 734.

We are unable to say from the circumstances of this case that the error did not affect the verdict. The trial judge admitted the certificate after ruling that the implied consent law was applicable. We can only assume that the judge relied upon the certificate in convicting Bristol. We and the Supreme Court have held that the error is not harmless even when there is compelling evidence of a defendant's intoxication independent of the certificate of analysis. See, e.g., Castillo, 21 Va. App. at 486, 465 S.E.2d at 148 (comparing Overbee, 227 Va. at 240, 315 S.E.2d at 243; Thomas, 226 Va. at 253, 308 S.E.2d at 121, and Durant, 4 Va. App. 445, 358 S.E.2d 732). As we held in Castillo, "[c]lear evidence . . . implies that the trial court applied the statutory presumption of intoxication; we[, therefore,] cannot say from the facts and circumstances that this error did not affect the verdict." 21 Va. App. at 491, 465 S.E.2d at 150.

For these reasons, we reverse the convictions and remand for a new trial if the Commonwealth be so advised.

Reversed.