Present:  All the Justices

MICHAEL MAURICE WHITE

OPINION BY
JUSTICE LAWRENCE L. KOONTZ, JR.
January 16, 2004

v.  Record No. 030476

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the evidence was sufficient to support the defendant's conviction under an indictment charging him with felony escape in violation of Code § 18.2-479(B).  The issue presented is whether the defendant was in "custody" within the meaning of that statute prior to his flight from a police officer.

BACKGROUND

"As required by established principles of appellate review, we will recite the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party in the [trial] court, and we will accord the Commonwealth the benefit of all inferences fairly deducible from that evidence." Stephens v. Commonwealth, 263 Va. 58, 59-60, 557 S.E.2d 227, 228 (2002).

On August 9, 2001, Michael A. Rushak, a motorcycle officer with the City of Chesapeake Police Department, observed a vehicle being operated without a front license plate.  Rushak requested a registration check of the vehicle and was advised that the number on the rear license plate was registered to a

vehicle of a different make and model.  Rushak stopped the vehicle and asked the driver for his license and registration. The driver, who identified himself as Michael Maurice White, told Rushak that his driver's license had been suspended and that he had no other form of identification.  White also told Rushak that the vehicle belonged to White's sister, and that he was aware that the license plate "doesn't belong on here."

Rushak ordered White to step out of his vehicle, telling him that it would be towed.  As White stepped from the vehicle, Rushak noticed that White's "left hand was trembling and wouldn't stop."  Concerned that White was uncharacteristically nervous for a person stopped for a routine traffic infraction, Rushak called for assistance.  Officer Meredith Bowen, who was on patrol in a marked police car nearby, arrived at the scene.

Rushak directed White to place his hands on his vehicle and proceeded with a protective pat-down search of White.  When Rushak placed his hand on White's right front pants pocket, White "tensed up" and said, "Don't go in my pocket."  Rushak felt what seemed to him to be "little rocks in a plastic bag" inside the pocket and asked White if this was crack cocaine.  At that point, White "came off the car," and a struggle ensued. Using what Rushak described as "roundhouse punches" while "swirling and turning," White attempted to push away from

Rushak. Rushak took hold of White's T-shirt, which ripped from White's body as he fled.

Rushak and Bowen pursued White. William Goodnoh, a city employee working in a park near where White's vehicle had been stopped, saw White fleeing and observed him reach into his pocket and then toss an object into some bushes. When other officers arrived, Goodnoh directed one of them to the location where White had tossed the object, and the officer recovered a small bag containing crack cocaine from that area. White was later found hiding in a backyard some distance away by one of the officers who arrived to aid in the search.

On February 5, 2002, the grand jury returned an indictment charging that White:

> On or about the 9th day of August, 2001, after lawfully having been confined in jail or after lawfully having been in the custody of a court, officer thereof, or a law enforcement officer on a charge or conviction of a felony, escape[d] such confinement or custody, in violation of § 18.2-479(B) of the Code of Virginia, 1950, as amended.

In a bench trial held on April 25, 2002, the Circuit Court of the City of Chesapeake (the trial court) heard evidence in accord with the above-recited facts.[1] In addition, Bowen

---

[1] In the same trial, White was tried and convicted on indictments charging him with possession of cocaine with intent to distribute, Code § 18.2-248, and assault and battery of a law enforcement officer, Code § 18.2-57(C). This appeal, however, is limited to White's conviction for felony escape. Accordingly,

3

testified in response to a question from the trial court that she did not "believe that [White] was under arrest" at the time she arrived on the scene. She also testified that she did not see White punch or kick Rushak, but that it appeared that he was "doing a spin and trying to get away."

Rushak testified that he conducted the pat-down search because "the sooner I know I'm dealing with somebody that appears not to have any weapons, the more comfortable I feel." He further testified that he intended to arrest White and that when he reached for his handcuffs and they made a noise, White made some comment to the effect that he was going to be arrested. On cross-examination, conceding that White was not under arrest at the time he conducted the pat-down search, Rushak testified that White "was being detained." Rushak further testified that when he suspected White was in possession of cocaine, he decided that White "was going into custody. We were working our way there."

At the conclusion of the Commonwealth's case-in-chief, White moved to strike the evidence of felony escape, asserting that the evidence failed to establish that White was in custody within the meaning of Code § 18.2-479(B) when he fled from Rushak. The Commonwealth responded that White had been in

we need not recount the incidents of trial relevant to the other

custody because Rushak "was about to place him under arrest" and he "was going to place him in custody for driving on a suspended license." The trial court described the evidence as to whether White was in custody as being "a little close," but ruled that it was sufficient to sustain the Commonwealth's burden "at this stage."

White testified on his own behalf. He recounted that he thought he was "just going to get a summons" when he was initially stopped by Rushak. White maintained that after the pat-down search he did not "know whether [Rushak was] going to lock me up or I'm going to get a summons . . . but I'm pretty sure that it ain't going to turn out for the good" and he "had a feeling that I might get locked up." White denied deliberately striking Rushak.

White further testified that although he purposely fled from Rushak, he knew the police would ultimately find him because he had given Rushak his correct name and other identifying information. White claimed that he intended to turn himself in after getting his paycheck later that week.

After concluding his testimony, White rested his case and argued against a conviction on the felony escape charge. He contended that "the elements of escape are simply not met"

offenses.

5

because under the facts of the case he was not told that he was under arrest and he "wasn't in custody."  The trial court noted that White testified that "he knew he was going to be arrested because he wanted to come down Friday and give himself up." White conceded that this was his subjective understanding, but asserted that the "case falls short" because the evidence showed that he was not under arrest and the officer was merely conducting a pat-down search when he ran away from the officer.

The trial court convicted White of felony escape, with White noting his objection.  Following consideration of a presentence report, the trial court sentenced White to three years in prison for felony escape and suspended the entire sentence.

White filed a petition for appeal in the Court of Appeals of Virginia.  Relevant to the issue raised here, the Court of Appeals denied White's petition, finding that "[t]he Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt" that White "was in Rushak's custody when he escaped."  We awarded White an appeal limited to the question whether the evidence was sufficient to establish that White was  "in police custody at the time of his flight."

DISCUSSION

Before addressing the merits of the issue presented in this appeal, we first consider the procedural default asserted by the Commonwealth to limit the scope of White's assignment of error. As relevant to the facts of this case, Code § 18.2-479(B) defines as a class 6 felony the escape of "any person . . . lawfully in the custody of . . . any law-enforcement officer on a charge or conviction of a felony."[2]  In his petition for appeal in this Court, White limited his assignment of error to the question whether the evidence was sufficient to prove that he was "in police custody at the time of his flight."  In briefing that assignment of error in the petition, White similarly limited his argument to contesting whether he was in custody, and did not address the further provision of the statute that requires the custody to be "on a charge or conviction of a felony."  Our order awarding an appeal to White, as noted above, limited the appeal to the issue argued in his petition, quoting verbatim the language of the assignment of error as White had framed it.

In his opening brief, however, White modified his assignment of error to include language asserting that his conviction was barred because he was not in "custody on a charge

or conviction of a felony." (Emphasis added). The Commonwealth, while not expressly objecting to the modification of the assignment of error, contends that White did not raise the issue of this requirement of the custody contemplated by Code § 18.2-479(B) in the trial court. Accordingly, the Commonwealth further contends that White's appeal, or at least so much of it as is directed to the question whether he was in custody "on a charge or conviction of a felony," is barred by Rule 5:25.

Although we agree with the Commonwealth that White did not expressly make the same argument and objection to his conviction in the trial court which he now asserts, we need not consider whether the argument and objections that were made below are sufficient under Rule 5:25 to preserve the issue for appeal as now asserted by White. The order awarding White this appeal set forth the assignment of error as it was worded in his petition. It is impermissible for an appellant to change the wording of an assignment of error, "especially when the assignment is set forth in the order of this Court awarding the appeal." Hamilton Development Co. v. Broad Rock Club, Inc., 248 Va. 40, 43-44, 445 S.E.2d 140, 142-43 (1994); see also Santen v. Tuthill, 265 Va. 492, 497 n.4, 578 S.E.2d 788, 791 n.4 (2003).

---

[2] Code § 18.2-479(A) defines as a class 1 misdemeanor escape

The improper modification of an assignment of error, however, will not prevent the appellant from arguing and having his appeal considered on the issue actually asserted in the trial court and for which an appeal was granted, provided that he has adequately briefed that issue. See Hudson v. Pillow, 261 Va. 296, 301-02 and n.8, 541 S.E.2d 556, 559-60 and n.8 (2001). White has presented argument in his brief relevant to the issue whether he was in police custody at the time of his flight. Consequently, we will limit our consideration in this appeal to the narrow issue raised in White's initial assignment of error, disregarding any argument on and expressing no opinion with respect to the additional issue interjected by the improper modification of that assignment of error in the opening brief.

We turn now to consider the merits of the issue presented in this appeal. Initially, we note that the term "custody" is not defined by Code § 18.2-479, and heretofore we have not addressed the meaning of that term in the context of that statute.[3]

---

while "on a charge or conviction of a misdemeanor."

[3] The Court of Appeals in Cavell v. Commonwealth, 28 Va. App. 484, 506 S.E.2d 552 (1998) (en banc), concluded that the defendant was not in custody within the meaning of that term under Code § 18.2-479 where the police officer did not touch the defendant and the defendant did not submit to the officer's show of authority. The Court held that the defendant "was not under arrest and, thus, was not in custody when he fled." Id. At 487, 506 S.E.2d at 553. We agree with the Commonwealth that to the

In determining the intent of the General Assembly from the language used in this statute, we may presume that the term "custody" was carefully chosen.  Undoubtedly, the General Assembly was well aware that, depending on the circumstances, the face-to-face interaction of an individual with a law enforcement officer generally may be classified as a consensual encounter, a temporary investigative detention, or an arrest.  These classifications, when properly determined upon the particular facts involved, have well-established legal significance insofar as the rights and obligations of the individual and those of the police are concerned.

In the context of our present considerations, a consensual encounter does not require any justification and may be terminated at will by the individual.  Investigative detentions, so called "Terry stops," require a justification of reasonable suspicion of criminal activity.  See Terry v. Ohio, 392 U.S. 1, 30 (1968).  During a Terry stop, the individual is not free to leave, but he is not under arrest.  See United States v. Swanson, 341 F.3d 524, 529 (6th Cir. 2003).  To be lawful, an arrest (without a warrant) requires a demonstration of probable cause regarding criminal conduct and occurs when the officer

extent that Cavell stands for the proposition that a formal arrest is necessary to establish custody as contemplated by Code § 18.2-479, it was erroneously decided.

actually restrains the individual or the individual submits to the authority of the officer.  See Howard v. Commonwealth, 210 Va. 674, 677, 173 S.E.2d 829, 832 (1970).

Although custody is not defined by Code § 18.2-479, the term connotes a deprivation of liberty, a condition beyond a temporary investigative detention, but involving less deprivation of liberty than absolute confinement.  Moreover, in a related context, the General Assembly has provided by statute that an individual can be in "custody" even when a formal arrest will not follow.  See Code § 19.2-74 (authorizing release of a person "in the custody of an arresting officer" upon issuing a summons for most misdemeanors); Code § 46.2-936 (same for most traffic offenses).  But see Lovelace v. Commonwealth, 258 Va. 588, 596, 522 S.E.2d 856, 860 (1999) (holding that such custody is not "equivalent to an actual custodial arrest").  Viewed in this context, it is clear that for purposes of prohibiting an escape under Code § 18.2-479, the General Assembly must have intended that the term "custody" would include a degree of physical control or restraint under circumstances other than those also necessary to constitute an actual custodial arrest. Stated differently, while an individual under arrest is always in custody for purposes of applying Code § 18.2-479, the individual need not be under formal arrest in order for the Commonwealth to prove that the individual was in custody.

11

Accordingly, we are of opinion that an individual is in "custody," as contemplated by Code § 18.2-479, when a law enforcement officer has lawfully curtailed the individual's freedom of movement to a "degree associated with a formal arrest," even when a formal custodial arrest has not been effected. See California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam) (addressing the meaning of "in custody" for purposes of requiring Miranda warnings). Applying an objective standard, the inquiry is whether the officer, with proper authority to do so, had by his words or use of physical force, curtailed the individual's freedom of movement beyond that required for a temporary investigative detention.

The record evidence in this case demonstrates that initially Rushak lawfully detained White because the vehicle White was driving was not properly tagged. Once Rushak determined that White did not have a valid driver's license, the propriety of continuing the detention beyond the time necessary to write a summons for the offense that occasioned the stop was established. Although Rushak could have taken White into custody in order to bring him before a magistrate under these circumstances, see Code §§ 46.2-936 and 46.2-940, it is clear that Rushak was still considering what action to take at that time. Thus, White was not yet in custody, but was only being detained.

12

Similarly, when Rushak directed White to exit his vehicle and determined, based upon his observations, that a protective pat-down was appropriate, the encounter was still clearly an investigative detention. Accordingly, we cannot say that White's permitting the pat-down amounted to a curtailing of his freedom of movement to a degree associated with a formal arrest. Otherwise, we would be forced to conclude that every investigative detention would transform into custody of the individual as soon as the individual acquiesced in the officer's request to permit such a search.

Nor can we say, as the Commonwealth would assert, that Rushak's belief that White was in possession of crack cocaine, while arguably sufficient to permit him to question White further, converted the temporary detention into a custody pending an arrest on that charge. Rushak's suspicion that White was in possession of illegal drugs, while reasonable, did not yet rise to the level of probable cause. See Murphy v. Commonwealth, 264 Va. 568, 574-75, 570 S.E.2d 836, 839 (2002).

Undoubtedly, Rushak's action in reaching for his handcuffs, White's reaction to their telltale clink, and Rushak's stated intention that White "was going into custody," are all indicative that Rushak intended to take White into custody for the purpose of placing him under arrest. It is undisputed, however, that Rushak had not yet restrained White for that

13

purpose, and it was at that propitious moment that White chose to flee rather than submit to Rushak's authority.

In sum, we hold that under Code § 18.2-479, an individual is in the custody of a law enforcement officer only where there has been a clear and effective restraint of the individual by the officer, either by having the individual in his physical control or by the individual's voluntary submission to the officer's authority, such that the individual's freedom of movement is curtailed to a degree associated with a formal arrest.[4] The record in this case establishes that at the point Rushak determined to place White in custody, he did not have White under sufficient restraint to have physical control over him, and White fled before Rushak could obtain that degree of

---

[4] Although we have found no case precisely on point with the facts here, our decision is in general accord with decisions of other jurisdictions. See, e.g., Ex parte McReynolds, 662 So. 2d 886, 888 (Ala. 1994) ("One cannot escape from custody until one is in custody . . . [which] is defined as a restraint or detention 'pursuant to a lawful arrest' "); Hubbard v. State, 800 P.2d 952, 954 (Alaska 1990) ("if an officer approaches an offender for the purpose of making an arrest, which he is unable to do because the other eludes him by running away, there has been no 'escape' "); People v. Thornton, 929 P.2d 729, 734 (Colo. 1996) ("for a suspect to be 'in custody' . . . an officer must have effected the suspect's arrest by establishing physical control of the suspect sufficient to provide reasonable assurance that the suspect will not leave"); State v. Ryan, 612 P.2d 102, 103 (Haw. 1980) ("once the defendant has submitted to the control of the officer and the process of taking him to the police station or to a judge has commenced, his arrest is complete, and he is in 'custody,' for the purposes of the escape statute").

control.  Under these circumstances, White was not in custody and his flight was not an escape as contemplated by Code § 18.2-479(B).  Accordingly, we further hold that the trial court erred in finding the evidence sufficient to convict White of felony escape under Code § 18.2-479(B).

## CONCLUSION

For these reasons, we will reverse the order entered by the Court of Appeals and dismiss the underlying indictment.

Reversed and final judgment.

15