COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:    Judges Huff, Malveaux and Senior Judge Annunziata
Argued by videoconference


JAI A. KING

v.        Record No. 1216-20-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE GLEN A. HUFF
JULY 13, 2021


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
T.J. Hauler, Judge Designate

A. Russell Watson (Gordon, Dodson, Gordon & Rowlett, on brief),
for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Following a bench trial, Jai King ("appellant") was convicted of felony escaping from the

custody of a jail, court, or law enforcement officer.  Appellant was sentenced to five years'

incarceration with four years suspended.  On appeal, he argues that he was not in the custody of

any court or law enforcement officer while participating in the home electronic monitoring

program.  Therefore, appellant contends, the evidence is insufficient to sustain his conviction.

This Court disagrees.  Because appellant remained in custody during his participation in

the home electronic monitoring program, this Court affirms his conviction.

I.  BACKGROUND

On appeal, this Court "consider[s] the evidence and all reasonable inferences flowing

from that evidence in the light most favorable to the Commonwealth, the prevailing party at

trial."  Williams v. Commonwealth, 49 Va. App. 439, 442 (2007) (en banc) (quoting Jackson v.

Commonwealth, 267 Va. 666, 672 (2004)).  So viewed, the evidence is as follows:

On August 16, 2019, appellant pled guilty to possession of ammunition by a felon. Appellant was sentenced to five years' incarceration with three years suspended. Appellant was remanded to the custody of the sheriff's department and authorized to participate in alternative incarceration programs offered by the department. Appellant was incarcerated in prison until October 30, 2019, when he was approved for and reassigned to the sheriff department's "home incarceration program" ("HIP"). Pursuant to that program, appellant wore a GPS ankle monitor allowing the sheriff's department to track his movement; he was not allowed to remove the monitor. Appellant was authorized to reside at a residence in Chesterfield County and to travel to and from work. Appellant was not allowed to travel anywhere else. Appellant signed a document acknowledging his agreement to these terms.

On December 30, 2019, appellant called Deputy Johnson, who worked on HIP cases. He told Deputy Johnson that he had been issued a summons for driving on a suspended license while making an unauthorized trip to a store. Deputy Johnson instructed him to bring the summons to the jail so that he could make a copy of it. Approximately one hour later, Deputy Johnson received a notification that appellant's ankle monitor had been altered.

Deputy Johnson attempted to call appellant, but nobody answered. Therefore, Deputy Johnson went to the last recorded position of appellant's ankle monitor — an on-ramp to I-95 — to search for him. When Deputy Johnson arrived, he found appellant's ankle monitor, which appeared to have been cut off. Appellant was not there.

After failing to locate appellant at either his residence or his place of employment, Deputy Johnson went to the magistrate's office and swore out warrants against appellant for felony escape from custody and for misdemeanor violation of the HIP terms.

On January 20, 2020, a different Chesterfield County sheriff's deputy located appellant and arrested him on the outstanding warrants. In February 2020, appellant pled guilty to the

misdemeanor charge and was sentenced to twelve months' incarceration with six months suspended. That conviction was not appealed.

On July 8, 2020, appellant was tried on the felony charge. Appellant moved to strike, arguing that his violation of HIP cannot amount to felony escape as a matter of law because he was not in the custody of a court, jail, or law enforcement agent. The trial court denied appellant's motions, convicted him, and sentenced him to five years' incarceration with four years suspended. This appeal followed.

## II. STANDARD OF REVIEW

Whether an individual is in custody is a mixed question of law and fact. See Hall v. Commonwealth, 280 Va. 566, 570 (2010). Therefore, this Court is "bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence." Id. (quoting Malbrough v. Commonwealth, 275 Va. 153, 168 (2003)). However, whether those facts rise to the legal standard of being in "custody" is a legal question that this Court reviews *de novo*. Id. (quoting Bristol v. Commonwealth, 272 Va. 568, 573 (2006)).

## III. ANALYSIS

Appellant contends that one is not in the custody of a court, jail, or law enforcement officer when participating in HIP. Therefore, he asserts, the evidence is insufficient to sustain his conviction. This Court disagrees.

It is a felony for "any person . . . in the custody of any court, officer of the court, or of any law-enforcement officer on a . . . conviction of a felony" to escape. Code § 18.2-479(B). The term "custody," as used in Code § 18.2-479, requires more than purely constructive control over a person. Davis v. Commonwealth, 45 Va. App. 12, 14-15 (2005). However, it includes circumstances "involving less deprivation of liberty than absolute confinement." White v. Commonwealth, 267 Va. 96, 104 (2004).

- 3 -

Whether participation in a home incarceration program meets the requirements of custody for the purposes of this statute is a matter of first impression for this Court. Nonetheless, precedent governing what constitutes custody in law enforcement interactions proves instructive. In that context, custody equates to "a condition beyond a temporary investigative detention." Id. However, a formal custodial arrest need not have been effectuated. Id. Rather, the proper inquiry is whether the "officer has lawfully curtailed the individual's freedom of movement to a degree associated with a formal arrest." Id. at 105.

The same fundamental test should apply in the post-conviction context. Therefore, the proper inquiry is whether the individual's freedom of movement was curtailed to a degree associated with incarceration at a jail or prison.

Applying this test to the circumstances of this case, appellant remained in custody during his time in HIP. While appellant was not actually incarcerated in jail or prison, his freedom of movement was heavily restricted. Appellant was allowed to leave his residence only to travel to and from work; he could not leave his residence for any other reason. Furthermore, the control over appellant's movement was not purely constructive. Appellant was subject to continuous GPS monitoring via an ankle monitor to ensure his compliance. Taken together, these restrictions on appellant's freedom of movement are severe and of a degree associated with incarceration in a jail or prison.

Appellant's reliance on Davis to argue the contrary is misplaced. Indeed, Davis fully comports with the test set forth above. In that case, the trial court granted Davis bail and released him after his conviction pending his sentencing hearing. Davis was allowed to remain free on bond with no restrictions on his freedom of movement. Davis was not subject to any form of tracking, GPS or otherwise. Likewise, there were no periodic reporting requirements. Davis was only given a date to report to the local jail. After failing to do so for six days, Davis

was arrested at a friend's apartment. This Court reversed his conviction for felony escape, holding that he had not been in custody. This Court emphasized that Davis was not subjected to the physical custody of any person and that his freedom of movement was not curtailed. In other words, the *de minimis* restrictions on Davis' freedom of movement did not rise to the degree associated with incarceration in a jail or prison.

This case lies on the other end of the spectrum. Davis was subjected to no restriction on his movement; nor were his movements monitored. He was merely given a date to return in the future. That is in stark contrast to this case, where appellant was prohibited from leaving his house for any reason except to travel to and from work *and* was subject to 24/7 GPS monitoring to ensure compliance. Accordingly, Davis lends no support to appellant's argument.

Appellant further contends that the statute governing assignment to electronic home incarceration programs supports his interpretation that participants in those programs are not in custody. See Code § 53.1-131.2. Appellant notes that the statute provides its own criminal offense, making it a misdemeanor to leave one's home or place of employment without authorization or just cause while in the program. Code § 53.1-131.2(E). However, nothing in that statutory provision establishes that it is the exclusive charge for such action.[1] It is, of course, not uncommon that singular actions may violate multiple criminal laws. In those cases, it is left to prosecutorial discretion which charge the Commonwealth pursues. In re Horan, 271 Va. 258, 264 (2006). Accordingly, this Court does not find the existence of a second applicable charge to persuasively support appellant's interpretation of Code § 18.2-479.

---

[1] Appellant did not appeal his misdemeanor conviction; nor does he raise any double jeopardy concerns. Therefore, this Court does not address whether a misdemeanor violation of Code § 53.1-131.2 would be a lesser-included offense of a felony violation of Code § 18.2-479.

## IV. CONCLUSION

Appellant remained in custody during his participation in the home incarceration program. Therefore, the trial court did not err in convicting him for felony escaping from custody when he cut off his GPS ankle monitor and absconded.

Affirmed.