COURT OF APPEALS OF VIRGINIA

Present:   Judges Fulton, Friedman and Raphael
Argued at Lexington, Virginia


JESSE RYAN HACKETT, S/K/A
  JESSI RYAN HACKETT

                                                              OPINION BY
v.        Record No. 1218-22-3                       JUDGE STUART A. RAPHAEL
                                                              JULY 25, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Frederick Watson, Judge

Catherine French Zagurskie, Chief Appellate Counsel (Elena Kagan,
Third Year Law Student; Virginia Indigent Defense Commission, on
briefs), for appellant.

Collin C. Crookenden, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Code § 18.2-460(E) makes it a Class 1 misdemeanor to knowingly flee from a law-enforcement officer attempting to make a lawful arrest, but only if the officer "applies physical force to the person" or has "the immediate physical ability to place the person under arrest." We have construed that subsection to require flight from the officer's "immediate span of control." *Peters v. Commonwealth*, 72 Va. App. 378, 388 (2020) (quoting *Joseph v. Commonwealth*, 64 Va. App. 332, 341 (2015)). Although the defendant here knowingly fled from a law-enforcement officer attempting to arrest him, the officer got no closer than 20 yards. Finding as a matter of law that this distance is too great to satisfy the statutory proximity requirement, we reverse the defendant's conviction.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard" the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On January 16, 2022, Lynchburg Police Officer M.D. Iazzi set out to arrest Jessi Ryan Hackett on a felony-arrest warrant. After viewing a photograph of Hackett, Iazzi drove to a residence where he hoped to find him and parked at the end of the street. Iazzi wore his police uniform. As he approached the residence on foot, he observed Hackett standing outside, about 20 to 25 yards away. After making eye contact with Iazzi, however, Hackett "took off running."

Iazzi told Hackett to stop and said he was under arrest, but Hackett kept running, saying "I didn't do anything wrong." Hackett escaped into the woods. Although Iazzi called for backup, other officers could not reach him due to "a bad snow storm." The record does not reveal the amount of snow on the ground.

About an hour later, Officer Iazzi found Hackett in a nearby neighborhood. From about 50 yards away, Iazzi told him to stop, but Hackett "took off on foot" and successfully escaped again. Hackett was later arrested and charged with misdemeanor fleeing from a law-enforcement officer under Code § 18.2-460(E).

At the bench trial that followed, Hackett moved to strike the Commonwealth's evidence, arguing that the Commonwealth had failed to prove under Code § 18.2-460(E)(ii) that Officer Iazzi had the "immediate physical ability" to arrest him. The trial court denied the motion and

convicted Hackett of the misdemeanor. Hackett was sentenced to 90 days' incarceration, with 60 days suspended.

ANALYSIS

Hackett challenges his conviction under Code § 18.2-460(E), which makes it a misdemeanor if a person "intentionally prevents or attempts to prevent a law-enforcement officer from lawfully arresting him." Subsection E further provides as follows:

> For purposes of this subsection, intentionally preventing or attempting to prevent a lawful arrest means fleeing from a law-enforcement officer when
>
> (i) the officer applies physical force to the person, or
>
> (ii) the officer communicates to the person that he is under arrest and
>
> > (a) the officer has the legal authority and the immediate physical ability to place the person under arrest, and
> >
> > (b) a reasonable person who receives such communication knows or should know that he is not free to leave.

Code § 18.2-460(E). Because Officer Iazzi did not "appl[y] physical force" to Hackett, as referenced in subsection (E)(i), Hackett's conviction depends on whether the Commonwealth proved the elements required by subsection (E)(ii).

Hackett does not dispute that Officer Iazzi told him that he was under arrest, that Iazzi had "the legal authority" to arrest him, that Hackett knew that he was "not free to leave," or that he fled. Hackett instead argues that Iazzi did not have the "immediate physical ability to place [Hackett] under arrest." Code § 18.2-460(E)(ii)(a). Taking the facts in the light most favorable to the Commonwealth, we assume that Iazzi came as close as 20 yards to Hackett when trying to arrest him.

Still, whether Hackett was close enough to be within Iazzi's "immediate physical ability" to place him under arrest, *id.*, presents a question of law that we review de novo. *See Peters*, 72

- 3 -

Va. App. at 390-91.  Examining the text, context, and drafting history of Code § 18.2-460(E), as well as the caselaw construing this statute and its predecessor, we conclude that Officer Iazzi did not have the "immediate physical ability" to arrest Hackett because, at 20 yards away, Hackett was outside of Iazzi's "immediate span of control."  *Peters*, 72 Va. App. at 388 (quoting *Joseph*, 64 Va. App. at 341).

### A.  The common understanding of "immediate"

"[W]e start with the text."  *Levick v. MacDougall*, 294 Va. 283, 292 (2017).  The statute does not define *immediate* in the phrase *immediate physical ability*, so we turn to the "common meaning of the word."  *Joseph*, 64 Va. App. at 338.  Black's Law Dictionary defines *immediate* as "[o]ccurring without delay; instant"; "[n]ot separated by other persons or things."  *Immediate*, *Black's Law Dictionary* (11th ed. 2019).  Webster's defines *immediate* to mean "occurring, acting, or accomplished without loss of time: made or done at once: INSTANT"; and "characterized by contiguity: existing without intervening space or substance."  *Immediate*, *Webster's Third New Int'l Dictionary Unabridged* (2021).  The Oxford English Dictionary (O.E.D.) gives this definition: "Having no person, thing, or space intervening, in place order, or succession . . . .  In reference to place often used loosely of a distance which is treated as of no account."  *Immediate*, *Compact Edition of the Oxford English Dictionary* (1971).

None of those definitions supports the Commonwealth's position that Officer Iazzi had the *immediate* physical ability to arrest Hackett when Iazzi got no closer to him than 20 yards.  The time and space to close that distance prevented Iazzi from arresting him "without loss of time" or "without intervening space" (*Webster's*), let alone "without delay" (*Black's*).  The 60 feet separating Iazzi from Hackett could not be "treated as of no account" (O.E.D.).

*B. The statutory context*

"[A] statute should be read and considered as a whole, and the language of a statute should be examined in its entirety to determine the intent of the General Assembly from the words contained in the statute." *Oraee v. Breeding*, 270 Va. 488, 498 (2005) (alteration in original) (quoting *Dep't of Med. Assistance Servs. v. Beverly Healthcare of Fredericksburg*, 268 Va. 278, 285 (2004)). In particular, the individual subsections of a statute should be "construed together." *Id.*; *Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972) ("[I]ndividual sections of a single statute should be construed together.").

Subsection (E)(i) of Code § 18.2-460 informs the meaning of subsection (E)(ii), showing that "immediate physical ability" to arrest requires close physical proximity between the officer and the defendant. A person violates subsection (E)(i) if he flees from the officer when "the officer applies physical force to the person." *Accord California v. Hodari D.*, 499 U.S. 621, 625 (1991) ("[A]n arrest is effected by the slightest application of physical force, despite the arrestee's escape . . . ."). The officer, of course, must be close enough to the defendant to apply such force. But what if the defendant runs away before the officer makes physical contact?

Subsection (E)(ii) addresses that scenario. Thus, a defendant violates the statute by fleeing when "the officer communicates . . . that he is under arrest and (a) the officer has the legal authority and the *immediate physical ability* to place the person under arrest, and (b) a reasonable person who receives such communication knows or should know that he is not free to leave." Code § 18.2-460(E)(ii) (emphasis added). Reading the two subsections together suggests that *immediate* physical ability to arrest in subsection (E)(ii)(a) requires that the officer be close enough to "appl[y] physical force to the person," even if the defendant gets away before the officer can successfully lay hands on him.

*C. The pre-2003 case law and the General Assembly's response*

The legislative history of Code § 18.2-479.1—the predecessor of Code § 18.2-460(E)—corroborates our conclusion that the immediate-physical-ability-to-arrest element requires that the officer be in close physical proximity to the defendant. The statute was enacted in 2003 against the backdrop of two of our earlier en banc decisions that addressed escaping from "custody," not from "arrest." So we begin with those earlier opinions.

In 1995, we held that a defendant could be guilty of escaping from "custody" under Code § 18.2-479(B), even if the law-enforcement officer had not laid hands on him, provided the officer had "the *immediate ability* to place [the defendant] under formal arrest." *Castell v. Commonwealth*, 21 Va. App. 78, 82 (1995) (en banc) (emphasis added), *overruled by Cavell v. Commonwealth*, 28 Va. App. 484 (1998) (en banc). The officers there told Castell that he was under arrest, and one officer came "within one inch" of seizing him, but Castell got away. *Id.* at 80. Still, we held that Castell's close physical proximity to the officer showed that Castell was "'lawfully in the *custody*' of the police officer." *Id.* at 82 (emphasis added) (quoting Code § 18.2-479(B)).

Judge Benton dissented. He emphasized the difference "between those situations in which an accused is 'in the *custody* of an officer' and those in which an officer is 'attempting to *arrest* him.'" *Id.* at 85 (Benton, J., dissenting) (emphasis added). Judge Benton concluded that Castell was not in the officer's custody because "the officer neither physically touched Castell nor exerted control over him. Furthermore, Castell did not submit to the officer's show of authority." *Id.*

Judge Benton's view prevailed three years later when we overruled *Castell*, holding that "immediate physical ability to arrest, without more, was not sufficient to effectuate an arrest," so it was also not enough to show that the defendant was in "custody." *Cavell v. Commonwealth*,

- 6 -

28 Va. App. 484, 486 (1998) (en banc), *overruled in part on other grounds by White v. Commonwealth*, 267 Va. 96 (2004). The arresting officer there came within "four or five feet" of arresting Cavell before he ran away. *Id.* at 485. We explained that "[u]nder the common law, an arrest required either the application of physical force or, where that was absent, submission to the assertion of authority." *Id.* at 486 (citing, among other authorities, *Hodari D.*, 499 U.S. at 626). Despite coming within a few feet of seizing Cavell, the officer "did not effectuate [Cavell's] arrest; he neither touched [Cavell] nor obtained [Cavell]'s submission to his show of authority." *Id.* at 487. And because Cavell was not arrested, he was "not in custody when he fled," so he did not violate the escape-from-custody statute. *Id.* *Cavell* expressly overruled *Castell*. *Id.*[1]

Five years later, the General Assembly enacted a new statute, Code § 18.2-479.1, 2003 Va. Acts ch. 112, the predecessor of Code § 18.2-460(E). The 2003 statute focused on fleeing from "arrest," not escaping from "custody." *See Hall v. Commonwealth*, 280 Va. 566, 570 n.2 (2010) (noting that Code § 18.2-479.1 does not require that the defendant be in "custody" to be guilty of fleeing from arrest). As noted above, this offense consists of the defendant's fleeing when the officer applies physical force to him or, short of physical contact, when the officer tells the defendant he is under arrest, a reasonable person would understand he may not leave, and the officer has both the legal authority "and the immediate physical ability" to arrest him. 2003 Va. Acts ch. 112 (Code § 18.2-479.1(B)).

The Commonwealth told us seven years ago that "it appears that Code § 18.2-479.1 was enacted in response to this Court's decision reversing Cavell's escape conviction."

---

[1] Six years later, the Supreme Court partially overruled *Cavell* on grounds not relevant here. *See White*, 267 Va. at 103 n.3 ("We agree with the Commonwealth that to the extent that *Cavell* stands for the proposition that a *formal* arrest is necessary to establish custody as contemplated by Code § 18.2-479, it was erroneously decided." (emphasis added)).

Commonwealth Br. at 36-37 (filed Jan. 11, 2016) *Battaglia v. Commonwealth*, No. 0719-15-4 (Va. Ct. App. Mar. 7, 2017). We agree. In fashioning this new offense, the General Assembly used the signature phrase "immediate physical ability" to arrest. *Cavell* had twice used that exact phrase. *See* 28 Va. App. at 486. We also said in *Cavell* that such "immediate physical ability" to arrest was "*required* by our holding in *Castell*." *Id.* (emphasis added); *see Castell*, 21 Va. App. at 82 ("Appellant understood that he was not free to leave, and the officers had the *immediate ability* to place appellant under formal arrest." (emphasis added)).

The General Assembly's incorporation of the immediate-physical-ability-to-arrest element, traceable to *Castell* and *Cavell*, strongly suggests that the legislature intended the statutory phrase to carry the same meaning as in those cases—the officer must be in close physical proximity to the defendant, whether "four or five feet" away, *Cavell*, 28 Va. App. at 485, or "within one inch," *Castell*, 21 Va. App. at 80. *Cf. Weathers v. Commonwealth*, 262 Va. 803, 805 (2001) ("When the General Assembly acts in an area in which one of its appellate courts already has spoken, it is presumed to know the law as the court has stated it and to acquiesce therein, and if the legislature intends to countermand such appellate decision it must do so explicitly.").

The inference that the General Assembly derived the immediate-physical-ability-to-arrest element from *Castell* and *Cavell* is also supported by the absence of that requirement in the laws of other States that criminalize fleeing from arrest. Not all States criminalize such conduct.[2] But

---

[2] *See, e.g.*, Haw. Rev. Stat. § 710-1026, cmt. ("The Code deals specifically with resisting arrest out of a desire to confine the offense to forcible resistance that involves some substantial danger to the person. Mere non-submission ought not to be an offense. One who runs away from an arresting officer or who makes an effort to shake off the officer's detaining arm might be said to obstruct the officer physically, but this type of evasion or minor scuffling is not unusual in an arrest, nor would it be desirable to make it a criminal offense to flee arrest. In this case the proper social course is to authorize police pursuit and use of reasonable force to effect the arrest. If the actor is captured, the actor may be convicted of the underlying offense.").

those that do typically focus on the defendant's act of fleeing from an arresting officer when the defendant knows that the officer is attempting to arrest him; close physical proximity to the defendant is not an element of the offense.[3] Virginia thus appears to be unique in requiring—as an element of the offense—that the officer have the "immediate physical ability" to arrest the defendant. "Virginia's statute presumably" includes that element "because our legislature made a policy decision . . . to include it." *Broadous v. Commonwealth*, 67 Va. App. 265, 273 (2017).

---

[3] *See, e.g.*, Ala. Laws § 13A-10-52(a) ("It shall be unlawful for a person to intentionally flee by any means from anyone the person knows to be a law enforcement officer if the person knows the officer is attempting to arrest the person."); Ark. Code Ann. § 5-54-125(a) ("If a person knows that his or her immediate arrest or detention is being attempted by a duly authorized law enforcement officer, it is the lawful duty of the person to refrain from fleeing, either on foot or by means of any vehicle or conveyance."); Del. Code Ann. tit. 11 § 1257(b) ("A person is guilty of resisting arrest when the person . . . intentionally flees from a peace officer who is effecting an arrest or detention of the person."); Ky. Rev. Stat. Ann. § 520.100(1) ("A person is guilty of fleeing or evading police in the second degree when: (a) As a pedestrian, and with intent to elude or flee, the person knowingly or wantonly disobeys a direction to stop, given by a person recognized to be a peace officer who has an articulable reasonable suspicion that a crime has been committed by the person fleeing, and in fleeing or eluding the person is the cause of, or creates a substantial risk of, physical injury to any person . . . ."); Minn. Stat. § 609.487, subd. 6 ("Whoever, for the purpose of avoiding arrest, detention, or investigation . . . attempts to evade or elude a peace officer, who is acting in the lawful discharge of an official duty, by means of running, hiding, or by any other means except fleeing in a motor vehicle, is guilty of a misdemeanor."); Mo. Rev. Stat. § 575.150(1) ("A person commits the offense of resisting or interfering with arrest, detention, or stop if he or she knows or reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or stop an individual or vehicle, and for the purpose of preventing the officer from effecting the arrest, stop or detention, he or she: (1) Resists the arrest, stop or detention of such person . . . by fleeing from such officer . . . ."); N.M. Stat. Ann. § 30-22-1(B) ("Resisting, evading or obstructing an officer consists of . . . intentionally fleeing, attempting to evade or evading an officer of this state when the person . . . has knowledge that the officer is attempting to apprehend or arrest him . . . ."); 18 Pa. Cons. Stat. § 5104.2(a) ("A person commits an offense if the person knowingly and intentionally flees on foot from a public servant attempting to lawfully arrest or detain that person."); Tex. Penal Code Ann. § 38.04(a) ("A person commits an offense if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him."); Utah Code Ann. § 76-8-305.5 ("A person is guilty of a class A misdemeanor who flees from or otherwise attempts to elude a peace officer: (1) after the officer has issued a verbal or visual command to stop; (2) for the purpose of avoiding arrest . . . ."); W. Va. Code § 61-5-17(d) ("A person who intentionally flees or attempts to flee by any means other than the use of a vehicle from a law-enforcement officer . . . who is attempting to make a lawful arrest of or to lawfully detain the person, and who knows or reasonably believes that the officer is attempting to arrest or lawfully detain him or her, is guilty of a misdemeanor . . . .").

*D. Our post-2003 precedent*

Our decisions construing the statute in *Joseph* (2015) and *Peters* (2020) provide additional support for our conclusion that an *immediate physical ability* to arrest requires the officer to be in close physical proximity to the defendant.

We found that Joseph could not be convicted of fleeing from arrest under Code § 18.2-479.1 because, although he resisted being handcuffed after stepping out of his vehicle, "there was no evidence of flight." *Joseph*, 64 Va. App. at 339. We prefaced our discussion in *Joseph* by explaining that "when construing a penal statute, 'a court . . . must strictly construe the statute and limit its application to cases falling clearly within its scope.'" *Id.* at 338 (quoting *Robinson v. Commonwealth*, 274 Va. 45, 51 (2007)). We then defined *fleeing* narrowly by reference to what the defendant must run away *from*—the officer's "immediate span of control." *Id.* at 339-41. Construing the term "'flee' in the context of the statute, we h[e]ld that fleeing from a law enforcement officer requires a form of running away or physically departing from the officer's *immediate span of control*." *Id.* at 339 (emphasis added). Joseph, however, "was never out of arm's reach from" the officer. *Id.* at 334.

*Joseph* repeated that phrase—*immediate span of control*—multiple times. *Id.* at 340 (Joseph's "physical movements were not beyond the scope of the officer's immediate span of control"); *id.* at 341 (requiring "evidence of running away or physical movement beyond the scope of the officer's immediate span of control"). The fourth time we said it, we linked "immediate span of control" to the officer's "close proximity" to the defendant:

> We hold that "fleeing" from an officer for purposes of Code § 18.2-479.1 requires some form of . . . movement away from the officer's *immediate span of control*, beyond the resistance that occurred in this case where the appellant "*remained continuously in . . . close proximity*" at all times.

*Id.* at 341-42 (second alteration in original) (emphases added).

- 10 -

We disagree with the Commonwealth's suggestion at oral argument that the phrase "immediate span of control" in *Joseph* was mere dictum that has no bearing on the meaning of the immediate-physical-ability-to-arrest element in subsection (E)(ii)(a). The Commonwealth reasons that the only issue in *Joseph* was whether the statute required flight, not the meaning of *immediate physical ability* to arrest. Under the interpanel accord doctrine, however, we are bound not only by "the literal holding of the case, but also . . . its *ratio decidendi*—the essential rationale in the case that determines the judgment." *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73-74 (2003). *Joseph* defined flight by reference to running away from the officer's "immediate span of control," and it did so twice in sentences setting forth the holding. *See Joseph*, 64 Va. App. at 339 ("we hold"); *id.* at 341 ("We hold . . . ."). Defining *fleeing* by reference to running away from the officer's "immediate span of control" thus provided the essential rationale of the holding. So it binds us here as far as it defines the meaning of *fleeing*.

The General Assembly implicitly ratified *Joseph*'s construction of the statute when it moved the statutory text of Code § 18.2-479.1 to subsection E of Code § 18.2-460. *See* 2018 Va. Acts ch. 417. The General Assembly is "presumed" to be aware of our appellate decisions. *Weathers*, 262 Va. at 805. Yet the legislature did nothing to "countermand," let alone "explicitly" change, *id.*, *Joseph*'s definition of flight by reference to running away from the officer's immediate span of control. Thus, *Joseph*'s immediate-span-of-control formulation remains controlling.[4]

---

[4] We see a natural congruence between that understanding of flight and the statute's two subsections explaining what the defendant must flee *from*: an officer who "applies physical force to the person" (subsection i) or an officer who tries but fails to do so, though having the "immediate physical ability to place the person under arrest" (subsection ii). In other words, the phrase coined in *Joseph*—"immediate span of control"—did a good job capturing the meaning of *both* subsections, albeit in the context of defining what constitutes flight.

- 11 -

In fact, we repeated that formulation two years later in *Peters*, stating that *Joseph* "held that '"fleeing from a law-enforcement officer" requires evidence of running away or physical movement beyond the scope of the officer's *immediate span of control*.'" *Peters*, 72 Va. App. at 388 (emphasis added) (quoting *Joseph*, 64 Va. App. at 341). Peters fled on foot from law enforcement after crashing his car following a high-speed chase. *Id.* at 390-91. We found that the officer had the "immediate physical ability" to arrest Peters because the officer was close enough to "taser Peters and then place himself on top of Peters." *Id.* at 391.[5]

*E. Applying Code § 18.2-460(E)(ii)(a)*

Considering the text, context, legislative history, and precedent construing the statute, we find as a matter of law that Officer Iazzi did not have the "immediate physical ability" to arrest Hackett, Code § 18.2-460(E)(ii)(a), because Iazzi got no closer to him than 20 yards. There was too much time and space separating them to conclude that Iazzi had the *immediate* physical ability to arrest Hackett. Put another way, Hackett was not within Iazzi's "immediate span of control" when he fled. *Peters*, 72 Va. App. at 388; *Joseph*, 64 Va. App. at 339-41.

We disagree with the Commonwealth that whether Iazzi had the immediate physical ability to arrest Hackett was a factual determination on which we owe deference to the trial court. There might well be cases in which a factfinder could reasonably conclude that the defendant is within the officer's *immediate physical ability* to arrest or *immediate span of control*

---

[5] The Commonwealth cites *Battaglia v. Commonwealth*, No. 0719-15-4, 2017 WL 894608 (Va. Ct. App. Mar. 7, 2017), to show that an officer can have the "immediate physical ability" to arrest a defendant even when the officer and the defendant are not very close to one another. Although an unpublished opinion may be considered for its persuasive value, it is not binding precedent. Rule 5A:1(f); *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012). And we do not find *Battaglia* persuasive here. For one thing, *Battaglia* did not mention the "immediate span of control" formulation from *Joseph*. For another, the opinion in *Battaglia* does not reveal how close the officer came to Battaglia before he fled from arrest. The Commonwealth noted in its brief, however, "that the distance between the two men was not great." Commonwealth Br., *Battaglia, supra*, at 28.

- 12 -

at distances greater than the "four or five feet" involved in *Cavell*. *See* 28 Va. App. at 485. This case does not require that we identify an outer limit. Just as 100 yards would be too great a distance as a matter of law, we are satisfied that 20 yards—60 feet—is also too far away as a matter of law to satisfy the "immediate" proximity requirement.[6]

CONCLUSION

Virginia appears to be the only State in the country that includes as an element of its fleeing-from-arrest law that the defendant must be within the officer's "immediate physical ability to place the person under arrest." Code § 18.2-460(E)(ii)(a). *See* note 3, *supra*. Our "judicial review does not evaluate 'the propriety, wisdom, necessity and expediency of legislation.'" *Appalachian Power Co. v. State Corp. Comm'n*, 301 Va. 257, 279 (2022) (quoting *Willis v. Mullett*, 263 Va. 653, 658 (2002)). Instead, this Court's role is to determine the meaning of that statutory element. Consistent with the origin of that requirement in *Castell* and *Cavell*, and following our precedent in *Joseph* and *Peters* that the defendant must flee from the officer's *immediate span of control*, we find that the Commonwealth failed to satisfy that close-proximity requirement here. Accordingly, the trial court should have granted Hackett's motion to strike.

*Reversed.*

---

[6] We likewise leave for another day the question of whether an officer can expand the range of the officer's *immediate physical ability* to arrest or *immediate span of control* by pointing a handgun, rifle, or taser at the defendant in the course of attempting the arrest.

Fulton, J., concurring.

Although I agree with the majority, under these facts, where Officer Iazzi was 20-25 yards from Hackett and in an area affected by a bad snow storm, that Officer Iazzi lacked the immediate physical ability to arrest Hackett. I write separately, however, because I disagree with the majority's conclusion that our holding in *Joseph v. Commonwealth*, 64 Va. App. 332 (2015), dictates the outcome in this case.

In *Joseph*, we reversed the conviction for fleeing from a law-enforcement officer, holding that this offense "requires some form of 'running away' or movement away from the officer's immediate span of control, beyond the resistance that occurred in this case where the appellant 'remained continuously in . . . close proximity' at all times." *Id.* at 341-42 (alteration in original). There are several important distinctions between *Joseph* and this case. First, and paramount to my interpretation, Joseph's challenge on appeal was limited to the question of whether his actions satisfied the "flight" element of the offense, *id.* at 338 ("[T]his case rises or falls based on the definition of the word 'fleeing.'"), and not whether the officer possessed the "immediate physical ability" to arrest Joseph.[7] Indeed, the officer in *Joseph* physically "placed his hands on the appellant's back" and "grabbed the appellant's right wrist and placed a handcuff on it." This application of physical force places Joseph's alleged flight squarely within the analysis of Code § 18.2-460(E)(i), not part (E)(ii), where Hackett's flight clearly lies. Code § 18.2-460(E) ("For purposes of this subsection, intentionally preventing or attempting to prevent a lawful arrest means fleeing from a law-enforcement officer when (i) the officer applies physical force to the person, *or* (ii) the officer communicates to the person that he is under arrest and (a) the officer has the legal authority and the immediate physical ability to place the person

_____

[7] In contrast, Hackett contests only the officer's "immediate physical ability" to arrest him and concedes on brief that "[t]here is no dispute that Mr. Hackett fled from Officer Iazzi."

- 14 -

under arrest, and (b) a reasonable person who receives such communication knows or should know that he is not free to leave." (emphasis added)).

In *Joseph*, we found no evidence of flight because Joseph never left the officer's "immediate span of control." 64 Va. App. at 339. Taking this phrase out of its context, the majority extends the holding in *Joseph* to conclude that a suspect's flight must "originate" from inside the officer's "immediate span of control."[8] However, because *Joseph* expressly limited its analysis to the "flight" element of this offense, its use of the phrase "immediate span of control" is not binding in our interpretation of the "immediate physical ability" to arrest element of the offense given the particular facts in this case.[9]

In *Peters v. Commonwealth*, 72 Va. App. 378 (2020), applying the right result for the wrong reason doctrine, we upheld Peters's conviction for misdemeanor fleeing from law-enforcement. Following a car chase that ended in a collision between Peters's car and the police car, Peters exited his car and fell to the ground. *Id.* at 384. The officer unholstered his taser and "'instructed [Peters] to stop,'" but "Peters 'jumped up and ran.' [The officer] chased Peters on foot" and "'g[a]ve [Peters] commands of taser three times' before activating the taser," causing Peters to "f[a]ll on the road," at which time the officer "placed himself on top of Peters, with his chest on Peters's back." *Id.* We held that "[t]he fact that [the officer] actually could taser Peters and then place himself on top of Peters . . . shows that [the officer] had the 'immediate physical ability to place [Peters] under arrest.'" *Id.* at 391 (fifth alteration in original).

---

[8] Notably, the majority does not define "immediate span of control."

[9] Although, as Hackett emphasized in oral argument, we held in *Joseph* that "fleeing from a law enforcement officer requires a form of running away or physically departing from the officer's immediate span of control," *Joseph*, 64 Va. App. at 339, that very sentence in *Joseph* begins by expressing that the Court is making this holding by "applying the plain meaning of the word 'flee' in the context of the statute." *Id.*

In *Peters*, we merely held that the evidence *in that case* was sufficient to prove misdemeanor fleeing from law-enforcement. Furthermore, my review of *Peters* contradicts the majority's application of *Joseph*, as there is no indication that Peters was ever within the "immediate span of control" of the officer until after the flight ceased when the officer successfully tased and placed himself on top of Peters. The *Peters* Court did not analyze the "immediate span of control" question as, like in the instant case, the only contested element was the officer's "immediate physical ability" to arrest. *Id.* at 390.[10]

Because the analysis in *Joseph* was expressly limited to the definition of "fleeing" and consideration of the "flight" element, I would not hold that it is binding on our analysis of the "immediate physical ability" to arrest element of this offense.

Turning to the common meaning of the term employed by the text, "immediate," I conclude under the facts of this case, in agreement with the majority, that regardless of the "immediate span of control," 20 yards or "60 feet separating Officer Iazzi from Hackett could not be 'treated as of no account'" and thus Officer Iazzi lacked the immediate physical ability to effectuate the arrest as required by the statute.

---

[10] It is important to note that because the officer's "immediate span of control," which pertains to the "flight" element, does not equate to the officer's "immediate physical ability" to arrest, the officer's use of a weapon, which might impact his "span of control," does not alter our analysis of the officer's immediate physical ability to arrest.