COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Causey, White and Frucci

ZOLLIE RUFUS BARRETT

v.      Record No. 1804-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
MARCH 3, 2026

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

(J. Barry McCracken, Assistant Public Defender, on brief), for
appellant.

(Jason S. Miyares,[1] Attorney General; Andrew T. Hull, Assistant
Attorney General, on brief), for appellee.


Following his conditional guilty plea, the Circuit Court of the City of Norfolk convicted

Zollie Barrett of possessing a firearm as a convicted felon, in violation of Code § 18.2-308.2.

The circuit court sentenced Barrett to three years of incarceration, with one year and seven

months suspended.  On appeal, Barrett challenges the circuit court's denial of his motion to

suppress evidence that he contends was recovered in violation of the Fourth Amendment.

Finding no error, we affirm the circuit court's judgment.[2]

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the appeal is wholly without merit."  *See* Code
§ 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND[3]

Norfolk City Police Officers Frantz and Martinson went to a residential address in Norfolk in response to a call for service. They arrived around 10:25 p.m. and spoke to the occupant of the house at the location, Joy Wood. Wood told the officers that Barrett, the father of her child, had just been at her house brandishing a firearm. She described Barrett as "a black male wearing a black hat with a black jacket and black pants." After speaking to Wood for 15 to 20 minutes, the officers received a call about someone firing gunshots within "walking distance" from Wood's address. The suspected shooter was described as "a black male wearing a black hat, black jacket, black pants." Officers Frantz and Martinson suspected that Barrett was the shooter.

The officers canvassed the area where the gunshots were fired but did not locate anyone. Moments later, they received another call from Wood. Barrett had returned to her house and was in the backyard. The officers went back to Wood's house, and Officer Burke showed up shortly thereafter.

When the officers arrived, they saw Barrett in the backyard; he was "wearing a black jacket, black pants, and black hat." Officer Frantz ordered Barrett to show his hands. Barrett turned and retreated behind the house. As the officers pursued Barrett, Officer Burke saw him make "a sweeping motion with his arm" as he "ditched" a firearm onto the neighboring property. Then Barrett turned around, simultaneously dropping his jacket and a backpack on the ground and raising his hands in the air. He subsequently complied with the officers' commands to get

---

[3] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

on the ground. The officers handcuffed him and quickly located a gun magazine in a "holster . . . inside his waistband." They opened Barrett's backpack and found multiple loaded magazines, a bottle of pills prescribed to Barrett, and a name tag bearing Barrett's first name. Officer Humphrey then arrived at the scene to search for the firearm Barrett discarded. Officer Humphrey eventually found the firearm on the neighboring property, "approximately 3 feet from the fence in between" Wood's home and the neighboring property. Barrett was arrested and charged with possession of a firearm as a felon.

Barrett moved to suppress the evidence against him, claiming that his seizure and the search of the neighboring yard and his backpack were unlawful. At the hearing, Officer Frantz testified to speaking with Wood and obtaining a description of Barrett. He also received the report of a shooter nearby, matching the description Wood had given. Then he recalled returning to Wood's house where they found Barrett. Officer Burke testified that Barrett threw "something over his shoulder with his left arm." Officer Burke conceded that he did not see a gun specifically, but he suspected that Barrett had thrown a gun. Officer Humphrey testified to finding the gun near the fence between Wood's home and the adjacent property. The Commonwealth entered evidence of the body camera footage from all three officers.

The circuit court found that the officers had reasonable suspicion to detain Barrett when they finally located him at Wood's house. Thus, the officer's seizure of Barrett was lawful. Furthermore, the circuit court found that Barrett could have been lawfully arrested for misdemeanor brandishing based on Wood's complaint. When the officers frisked Barrett, they found a loaded magazine, which further corroborated their suspicion that Barrett was the individual suspected of "multiple firearm offenses." The circuit court found that the search of Barrett's backpack was a lawful search incident to his arrest. In addition, Barrett had no expectation of privacy in the neighboring property, and Barrett had abandoned the gun on that

property, thus the search of the neighboring property and recovery of the gun was lawful. Accordingly, the circuit court denied Barrett's motion. Barrett then entered a conditional guilty plea that preserved his right to appeal. Barrett appeals.

ANALYSIS

"In reviewing the denial of a motion to suppress, we 'consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial.'" *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017)). "[A] 'defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo.'" *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)). "[W]e give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Id.* "When challenging the denial of a motion to suppress on appeal, the defendant bears the burden of establishing that reversible error occurred." *Hogle v. Commonwealth*, 75 Va. App. 743, 750 (2022) (quoting *Street v. Commonwealth*, 75 Va. App. 298, 303-04 (2022)).

Barrett argues that police officers unlawfully seized him in Wood's backyard. He contends that the seizure was an arrest rather than an investigative detention and that the officers lacked probable cause for the seizure. Therefore, he argues that the circuit court should have suppressed the magazine found on his person and the contents of his backpack. Barrett asserts that even if his seizure was lawful, the warrantless search of his backpack was not.

"The Fourth Amendment protects people from unreasonable searches and seizures." *Williams v. Commonwealth*, 71 Va. App. 462, 476 (2020). "The 'touchstone of the Fourth Amendment is "reasonableness,"' as measured in objective terms." *Barnes v. Felix*, 605 U.S. 73, 79 (2025) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). An inquiry into the

reasonableness of police action under the Fourth Amendment "requires analyzing the 'totality of the circumstances.'" *Id.* at 80 (quoting *County of Los Angeles v. Mendez*, 581 U.S. 420, 427-28 (2017)).

"The probable cause inquiry is no different." *Durham v. Commonwealth*, 303 Va. 310, 322 (2024). "Whether an officer has probable cause to arrest an individual in the absence of a warrant is determined under an objective test based on a reasonable and trained police officer's view of the totality of the circumstances." *Brown v. Commonwealth*, 270 Va. 414, 419 (2005). "To be lawful, an arrest (without a warrant) requires a demonstration of probable cause regarding criminal conduct and occurs when the officer actually restrains the individual or the individual submits to the authority of the officer." *White v. Commonwealth*, 267 Va. 96, 104 (2004).

The officers had received multiple complaints from several witnesses that a man "wearing a black hat with a black jacket and black pants" had been brandishing and firing a gun. They found Barrett trespassing in someone's backyard at night, wearing clothes matching the description of the shooter. The officers lawfully ordered Barrett to stop because the "existence of reasonable suspicion permits a brief seizure." *Hairston*, 67 Va. App. at 561. But rather than comply with the officers' orders, Barrett receded behind the house and was seen throwing "something." Barrett was not seized until after he threw the gun and submitted to the officers' authority. *See White*, 267 Va. at 104; *see also California v. Hodari D.*, 499 U.S. 621, 626 (1991). At that point, the officers had developed probable cause to believe he was the shooter. *See Sibron v. New York*, 392 U.S. 40, 66-67 (1968) ("[D]eliberately furtive actions and flight at the approach of . . . officers are strong indicia of *mens rea*, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.").

Furthermore, an officer may "arrest [an individual] without a warrant for an alleged misdemeanor not committed in their presence involving . . . brandishing a firearm in violation of § 18.2-282 . . . when any such arrest is based on probable cause upon reasonable complaint of the person who observed the alleged offense." Code § 19.2-81(G)(iv). As the circuit court properly found, the officers had probable cause to arrest Barrett based on Wood's complaint that he had brandished a gun at her. The search of Barrett's backpack was proper since "lawful arrest 'justifies a contemporaneous warrantless search of the individual arrested and of the immediately surrounding area'" even if "the arrestee has been restrained, as long as the search is contemporaneous with the arrest." *Archer v. Commonwealth*, 26 Va. App. 1, 9 (1997) (quoting *White v. Commonwealth*, 24 Va. App. 446, 450 (1997)). Moreover, once officers found a magazine on Barrett's person, considering the accompanying circumstances, they had independent probable cause to search his backpack. *See Jones v. Commonwealth*, 277 Va. 171, 178 (2009) (holding that probable cause to make a warrantless search exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place").

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*